**In the Matter of YALE EXPRESS SYSTEM, INC., and subsidiaries, Debtor.**

**No. 65 B 404.**

United States District Court, S. D. New York.

May 11, 1972.

Royall, Koegel & Wells, New York City, for Trustee in reorganization.

Stein & Rosen, New York City, for Claimant Altul Fuel Co.

OPINION

TYLER, District Judge.

In proceedings on the trustee's recommendation of a final plan of reorgani-

zation of the two remaining debtors in these Chapter X proceedings, vendor-claimant Altul Fuel Company ("Altul") has objected to the recommended plan because it does not create a class of unsecured creditors entitled to receive priority simply because they supplied goods or services to the debtors within six months prior to the filing of petitions. In the exercise of discretion, it is concluded that invocation of the six month rule in favor of Altul or any similarly situated claimant is totally inappropriate.

Altul alleges that within the three months prior to reorganization proceedings being instituted in this court, it furnished gas and oil products to Yale Transport Corp. and Yale Cartage Corp., two debtors which are subsidiaries of the principal debtor, Yale Express Systems, Inc. Altul, therefore, has filed claims in the sum of $52,940.32 against Yale Transport, and $21,884.20 against Yale Cartage.

Article 3 of the presently pending final plan of reorganization divides creditors of the debtors into seven classes. Unsecured creditors are designated as class 5 and 6; class 5 consists of those whose claims amount to $250 or less, and class 6 includes all other unsecured creditors. Thus, as Altul submits, the proposed plan certainly does not provide for any class of unsecured creditors under the so-called "six months rule". On March 23, 1972, the Securities and Exchange Commission ("the Commission") submitted its supplemental report on the proposed plan of the trustee for reorganization. Significantly, the Commission chose to speak to the contention of Altul in respect to the six months rule. In its unanimous report, the Commission submits that under the circumstances of the plan and the present financial condition of the remaining debtors, it would be clearly erroneous to apply the six months rule in these proceedings. See Supplemental Report of the Securities and Exchange Commission on Plan of Reorganization, Release No. 311, pp. 10–16.

As indicated, the total amount of Altul's claims comes to $74,824.52. The proposed plan provides that an unsecured creditor such as Altul will receive 142% of its claim, partly in notes and partly in common stock. In the compass of these proceedings, Altul's total claim can scarcely be described as one looming large in the reorganization picture. Nonetheless, as the Commission and the counsel for the trustee point out, the total claims of vendor-unsecured creditors for whom Altul is the spokesman, amount to approximately $3,300,000. Thus, if Altul were to prevail on its claim and persuade this court to rule that this class of creditors is entitled to treatment more favorable under the six months rule, this would have a drastic impact on the proposed plan, which, except for minor details, has already been substantially approved by the Commission and almost all other creditors. Indeed, I conclude that the trustee may be right when he suggests that acceptance of the Altul viewpoint by this court would likely render unfeasible the present attempts to reorganize the remaining debtors in the foreseeable future.

The six months rule, which had its origin in railroad receivership cases, was first applied in Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1878). That case laid "great emphasis on the consideration that a railroad is a peculiar property of a public nature, and discharging a great public work." See Wood v. Guarantee Trust & Safe Deposit Co., 128 U.S. 416, 421, 9 S.Ct. 131, 32 L.Ed. 472 (1888). Altul properly argues that although the six months rule had its origin in railroad receivership cases, there have been instances where reorganization courts have applied it wholly or in part in so-called straight reorganization proceedings. See 6A Collier on Bankruptcy (14th Ed.), pp. 249–250, fn. 35 and cases cited therein. Altul also appears to take comfort from a footnote in a 1966 Court of Appeals opinion in these proceedings, In re Yale Express System, Inc., 2 Cir., 362 F.2d 111, 117,

fn. 5, wherein the writer suggested that the claimant-appellant then before the court "might argue that it is entitled to preferred treatment in a plan . . . at least where the claims accrued within six months of the filing of the petition."

In my view, Altul takes too broad a reading of the authorities which it presents in its brief. With significant specificity, Congress, upon codification of § 77 of the Bankruptcy Act, 11 U.S.C. § 205, included therein the six months rule for railroad reorganizations, but it refrained from doing so later on when it promulgated the provisions of Chapter X in 1938. As the Commission points out in its supplemental report, this was not an oversight but a deliberate Congressional decision. See Analysis of H. R. 12889 Containing Amendments Proposed by the National Bankruptcy Conference Printed for the Use of the Committee on the Judiciary House of Representatives, (74th Cong.2d Sess., 1936) at p. 74. Thus, the courts in this circuit and elsewhere have recognized that even though the six months rule has been allowed to carry over to some extent from § 77 to Chapter X proceedings through the exercise of judicial discretion under § 197, it is a rare case where the rule has been applied to ordinary private commercial entities. See In re North Atlantic and Gulf Steamship Co., Inc., 200 F.Supp. 818 (S.D.N.Y., 1962), aff'd without discussion of this point sub nom., Schilling v. McAllister Bros., 310 F.2d 123 (2d Cir., 1962); In re Pusey & Jones Corp., 192 F.Supp. 233 (D.Del.); aff'd 295 F.2d 479 (3d Cir., 1961). Blanket application of this equitable rule in straight reorganization runs counter to the order of priorities and distribution created by the Act and should not be applied generally. See In re North Atlantic and Gulf Steamship Co., Inc., *supra*. With the exception of one case, the six months rule in this circuit has been limited to cases where there exists a strong public interest in and need for continuing company operations which are public or semi-public in nature. Such enterprises, whether publicly or privately owned, might best be described as natural or quasi-monopolies. Even one peripherally connected with these reorganization proceedings is well aware that within the area of the certificated transportation routes of the debtors—i. e. the northeast corridor of the United States from northern New England to the District of Columbia—there is ample competition from other firms in motor transport, freight forwarding and local cartage hauling. It would be inappropriate, therefore, to conclude that these debtors are the type for which the six months rule should be invoked.

The one case in this circuit in which the rule has been applied to a private commercial entity in a highly competitive field was Dudley v. Mealey, 147 F. 2d 268 (2d Cir., 1945). In *Dudley*, the appellate court held that the reorganization court did not abuse its discretion in applying the six months rule, thereby giving priority to those unsecured creditors which had supplied essential goods and supplies to a hotel company in Chapter X proceedings. The court placed emphasis on the fact that while the interest of the public was a "paramount consideration in the origin of the rule, the interests of the lienors themselves may make equally imperative some protection to supply creditors." *supra* at 271. The court reasoned that the value of a hotel depended greatly upon its continued operation and preservation of its goodwill; thus, had the unsecured creditors ceased supplying essential goods, thereby shutting down hotel operations, the lienholders' interests would have greatly decreased. Under these peculiar circumstances, the court concluded that equitable discretion required invocation of the six months rule in favor of the supplier-creditors.

Subsequent cases have indicated that *Dudley* should be limited to its or closely analogous facts. See In re North Atlantic and Gulf Steamship Co., *supra*; In re Pusey and Jones Corp., *supra*. Indeed, in Johnson Fare Box Company v. Doyle, 250 F.2d 656 (2d Cir.), cert. de-

nied, 357 U.S. 938, 78 S.Ct. 1385, 2 L. Ed.2d 1551 (1958), a case involving a public utility, the court indicated that use of the six months rule should always be severely limited, saying:

> "The so-called six months' priority rule is an invasion of the established contract rights of lienholders. As an invasion the rule should be strictly contained within narrow confines and limited to the purposes which brought it into being." *supra*, 250 F.2d at 657.

In *Dudley*, the corporation had assets of approximately $1,000,000 against mortgage liabilities of approximately $1,200,000, while the suppliers' claims aggregated only $10,276.82. Accordingly, payment to the suppliers had only a minimal effect upon the other creditors, particularly as compared to the devastating effect upon them had the supplier-creditors ceased supplying the hotel. The situation in *Yale Express* is markedly different. Debtors' assets in this case are not all mortgaged; over a year ago the operating companies had turned from the red to the black; and the proposed plan contains features which would appear to be desirable from the viewpoints of all classes of creditors. Indeed, the debtors are solvent and are emerging, if not blossoming, into profitable entities. Secured creditors will not consume debtors' estate and leave vendor-creditors, such as Altul, whose goods accrued to the benefit of secured creditors, with significant losses—if any losses at all. Finally, unlike the situation in *Dudley*, application of the six months rule here, far from nourishing the priorities created by the Act, would unfairly favor vendor claims totalling approximately $3,300,000 to the detriment of other creditors and the present plan to reorganize the debtors. Necessarily, then, invocation of the rule would constitute an abuse of discretion with the concomitant serious risk of dissipating the diligence and hard work of the trustee, the officers and employees of the remaining debtors, who have struggled for seven years to come to this promising point in these reorganization proceedings.

Though this view effectively disposes of Altul's claim, one corollary issue and the arguments of the trustee and Altul bearing threon deserve brief comment. In recognition of the rule of this circuit that the question of whether six months vendor-creditors receive priority depends upon the existence of a "current debt fund" or "current expense fund" of the debtors, In re New York, New Haven and Hartford Railroad Co., 405 F.2d 50, at 52 (2d Cir., 1968), the trustee has submitted an affidavit of financial information to support his contention that no such fund exists. In substance, that affidavit reveals the following: Since reorganization commenced and during fiscal years 1965 through 1971, which period includes five of the six months prior to the date of filing the first of the petitions of reorganization, Yale Express System and its subsidiaries suffered aggregate net losses of approximately $17,000,000. Of these total losses, those debtors still in reorganization contributed 78% or at least $13,300,000. During 1964, Yale Express System and its subsidiaries had a net loss of more than $4,400,000, of which approximately $2,510,000 was attributable to the debtors still in reorganization and thus the subjects of the presently pending plan. Furthermore, it has been traditional during the past seven years and theretofore that December is a relatively poor month for Yale Express and its subsidiaries—as indeed is the case for the entire motor freight and freight forwarding businesses. Thus, it is very likely that the results of December, 1964 were responsible for a heavier than *pro rata* share of fiscal 1964 losses of the remaining debtors.

From this information, the trustee urges that there exists no current debt fund of the remaining debtors in reorganization. Altul, on the other hand, questions these facts—and the ultimate conclusion drawn by the trustee therefrom; indeed, Altul has demanded that this court permit discovery under the

Federal Rules of Civil Procedure of financial books and records of debtors in order to attempt to disprove the trustee's facts and conclusion. Because of the conclusion heretofore reached on other grounds that the six months rule should not be applied to this case, I determine that there is no reason to permit discovery on the question of whether or not there presently exists a current debt fund.*

The application of Altul is denied in all respects. It is so ordered.

---

\* From the observations of the writer, who has been the reorganization judge since initiation of these proceedings, it is virtually certain that the trustee's conclusion is correct as a factual matter. Nonetheless, in fairness, I decline to use the experience and information which I have obtained in regard to debtors' financial affairs "against" Altul on this application.