In the Matter of George William **GREEN**, individually and doing business as S. Adams Packing Company, Adams Packing Company and Redi-Cut Meats, Bankrupt.

**UNITED STATES of America,**
**Petitioner on Review,**

v.

**John J. GAUDIO, Trustee in Bankruptcy,**
**Respondent on Review.**

No. 37439.

United States District Court
D. Colorado.

March 7, 1967.

Lawrence M. Henry, U. S. Atty., Donald E. Cordova, Asst. U. S. Atty., Denver, Colo., and Stephen Fuerth, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., for petitioner on review.

Bernard E. Engler, Denver, Colo., for trustee in bankruptcy.

Paul B. Rodden, Denver, Colo., for estate of Jake Burkhardt, deceased.

Robert F. Thompson, Denver, Colo., for Public Service Co. of Colorado.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

This matter came on for hearing before the Court on February 10, 1967, on a petition by the United States to review an Order of the Referee entered on August 4, 1966, denying the petitioner's petition for reclamation.

The facts are set forth in the Referee's Order and are not in dispute and we here quote the Referee's Findings of Fact:

"George William Green filed a proceeding under Chapter XI of the Bankruptcy Act on February 1, 1964. The arrangement proposed by him, as modified, was confirmed October 5, 1964. From the inception of the Chapter XI proceeding until September 27, 1964, with an interval here of no concern, he was debtor-in-possession. After that date and until January 6, 1965, when an order that bankruptcy be proceeded with was entered, Matthew H. Lander was Receiver; and both the debtor-in-possession and the Receiver carried on Green's business of meat packing.

"At the time of confirmation a stipulation, dated October 5, 1964, between the United States, Green and others was entered into and filed and, with a modification not here important, was approved by the Court. Under this stipulation the United States has so far been paid some $24,000.00 on account of taxes. The stipulation contains these paragraphs:

'2. That the amount [$7000.00] so waived from the deposit by the United States in addition to Internal Revenue taxes accrued during the third quarter of 1964, shall be and are considered expenses of administration throughout this arrangement.

'3. That deferred payments of said taxes shall be made in regular monthly installments to be determined by further court order, together with the legal rate of interest on the deferred balance subsequent to the confirmation of the plan of arrangement to date of payment of the taxes in full.'

"The order contemplated by quoted paragraph 3 was not sought or entered; and there was no compliance with an order sought and obtained by the Internal Revenue Service on July 27, 1964, which directed the deposit by the debtor-in-possession with the Court of funds necessary to discharge currently accruing taxes. The United States concedes it made no effort to procure enforcement of the order of July 27.

"When the Chapter XI arrangement collapsed taxes were asserted to have accrued and to be due the United States as follows:

| "Kind of Tax and Period | Tax | Penalty | Interest to Mar. 8, 1966 | Total |
|---|---|---|---|---|
| WT–FICA 3Q64 | $13,641.52 | $682.08 | $1,160.48 | $15,484.08 |
| WT–FICA 4Q64 | 97.30 | | 6.46 | 103.76 |
| | | | Total | $15,587.84 |

"March 11, 1966, the United States filed its petition to reclaim from the assets which had come into the hands of the Trustee in Bankruptcy the amount of the listed taxes upon the ground ' * * * That the taxes withheld by the debtor-in-possession and/or the receiver constitutes a trust fund for the United States under Section 7501 of the Internal Revenue Code of

1954 which should be turned over to the Treasury Department, Internal Revenue Service, free of costs and expenses of administration. * * *'

Section 7501 reads as follows:

'Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.' "

The Government contends that by virtue of Section 7501, the assets coming into the hands of the trustee were "trust funds"; that these funds are therefore not subject to the priority provisions of § 64(a) of the Bankruptcy Act; and that these funds must be excluded from the assets of the estate and paid to the United States without deduction. There are authorities which support the Government's contention. See City of New York v. Rassner, 2 Cir., 127 F.2d 703; United States v. Sampsell, 9 Cir., 193 F.2d 154; Hercules Service Parts Corp. v. United States, 6 Cir., 202 F.2d 938; and In re Airline-Arista Printing Corp., D.C.N.Y., 156 F.Supp. 403, aff. 2 Cir., 267 F.2d 333.

The Referee in denying the Government's petition for reclamation chose to follow the Third Circuit's construction of § 7501(a) In re Connecticut Motor Lines, Inc., 336 F.2d 96 (1964). In that case the Government sought isolation of the bankrupt's funds to satisfy taxes on the "trust fund" theory pursuant to § 7501(a). The Court held that this contention was defeated by the very language of § 7501 and after quoting that Section, stated:

"Thus, although such collections are considered by law to be held in trust, that trust is subject to the same limitations as are the taxes from which the trust arose. Here, that limitation is the structure of the Bankruptcy Act, the fact that such trust funds can only be collected in the instant case as a fourth priority matter."

██ The Government's contention that this rule should not apply because these taxes were incurred during the pendency of the Chapter 11 proceedings and the receivership, in our opinion, is without merit. It appears clear to us that the second sentence of § 7501(a) means that the trust fund mentioned in the first sentence is nevertheless subject to the provisions of § 64(a) of the Bankruptcy Act which establishes a priority for all expenses of administration including taxes. So construed there is no conflict between § 7501(a) and § 64(a) of the Bankruptcy Act.

██ If, however, there is a conflict between § 7501(a) and § 64(a) of the Bankruptcy Act, we conclude that § 64(a) should prevail. In Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706 (1912) it was held that § 64 of the Bankruptcy Act prevailed over a general statute (Revised Statutes § 3466) which provided that in case of insolvency of one indebted to the United States, the debts due the United States shall be first satisfied and that this priority of the United States shall extend to cases in which an act of bankruptcy is committed.

In Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974 (1925), the Supreme Court approved Guarantee Title & Trust Co., supra, and again held that § 64 of the Bankruptcy Act prevailed over the priority of the United States provided in § 3466 of the Revised Statutes.

More recently, the Supreme Court has referred to the policy which led to the establishment by § 64(a) (1) of the Bankruptcy Act of priorities that place all expense of administration on a priority, including claims for taxes as a "strong policy." Nicholas v. United States, 384 U.S. 678 at 691, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966).

The Court in Guarantee Title & Trust Co., supra, denominated the policy as "beneficent."

 We can read into § 7501(a) no Congressional intent to repeal, revise or modify its "strong" and "beneficent" policy of subjecting the Government's tax claims to the priorities established by § 64(a) of the Bankruptcy Act.

For the foregoing reasons, we affirm the Referee's conclusions of law upon the admitted facts and his denial of the petition for reclamation and this matter is hereby remanded to the Referee for further proceedings.