## UNITED STATES *v.* RANDALL, TRUSTEE IN BANKRUPTCY

No. 125.   Argued February 22, 1971—
Decided March 24, 1971

Douglas, J., delivered the opinion of the Court, in which Harlan, Brennan, White, and Marshall, JJ., joined. Blackmun, J., filed a dissenting opinion, in which Burger, C. J., and Black and Stewart, JJ., joined, *post,* p. 518.

*Richard B. Stone* argued the cause for the United States.   With him on the brief were *Solicitor General Griswold, Assistant Attorney General Walters,* and *Crombie J. D. Garrett.*

*Kevin J. Gillogly* argued the cause for respondent. With him on the brief was *Daniel C. Ahern.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Halo Metal Products, Inc. (the debtor) was kept in possession of its business by court order under Chapter XI of the Bankruptcy Act, 11 U. S. C. § 701 *et seq.* The order required it to open three separate bank accounts for its general, payroll, and tax indebtedness and to make appropriate disbursements from those accounts. Salaries and wages paid were to be credited against the payroll account and checks for wages and for withheld income and social security taxes were to be paid after approval by the referee. Checks for the withheld taxes were to be paid into the tax account. Withdrawals from this account were to be allowed only for payment of withheld taxes and welfare obligations.

The debtor did not comply with those requirements. Although it withheld income and social security taxes from the wages of its employees, it did not deposit them in the special tax account and did not pay them, as required, to the United States.

Later the debtor was adjudicated a bankrupt. The United States, which had previously filed a proof of claim in the Chapter XI proceedings for payment of the taxes, now asked the bankruptcy court to pay the amount of withheld taxes prior to the payment of the costs and expenses of administration of the bankruptcy proceedings. The referee denied the request. The District Court agreed with the referee. The Court of Appeals affirmed the order denying payment, 419 F. 2d 1068. The case is here on petition for a writ of certiorari which we granted (400 U. S. 817) because of a conflict among the circuits, cf. *City of New York* v. *Rassner,* 127 F. 2d 703; *United States* v. *Sampsell,* 193 F. 2d 154; *Hercules Service Parts Corp.* v. *United States,* 202 F. 2d 938.

The United States relies for its priority on 26 U. S. C. § 7501 (a), which provides:

"Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

The argument is that withheld taxes are a trust in favor of the United States. It is answered that the debtor-in-possession failed to segregate the taxes so withheld; hence there was no trust. To that the United States replies that since the debtor-in-possession was a court-appointed officer, the misconduct of the officer should not defeat the trust.[1] And, the argument continues, creditors are not unfairly harmed since the trust funds were never an asset of the estate.

We deal, however, with a Bankruptcy Act which we conclude is an overriding statement of federal policy on this question of priorities. Section 64 (a)(1) of the Act, 11 U. S. C. § 104 (a)(1) (1964 ed., Supp. V), provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration . . . . Where an order is entered in a pro-

---

[1] "Where the funds are received by a public officer, such as a receiver or trustee in bankruptcy, the owner of the funds is entitled to priority with respect to the funds so received without further tracing." 5 A. Scott on Trusts § 521, p. 3652 (3d ed. 1967).

ceeding under any chapter of this title directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding . . . shall have priority in advance of payment of the unpaid costs and expenses of administration . . . incurred in the superseded proceeding . . . ."

Until 1926 claims for administrative expenses were subordinate to tax claims.[2] In that year they were placed ahead of taxes.[3] The costs and administrative expenses of a trustee were, however, still subordinate to claims of the referee or creditors for preserving or recovering assets.[4] In 1952 the Act was amended to give priority to administrative expenses of an ensuing bankruptcy proceeding over unpaid administrative expenses of a superseded proceeding.[5]

We have then a progressive legislative development that (1) marks a decline in the grant of a tax preference to the United States and (2) marks an ascending priority for costs and expenses of administration.

---

[2] 3A Collier on Bankruptcy 2046–2048, 2155–2156 (14th ed. 1969).

[3] 44 Stat. 662.

[4] Collier, *supra*, n. 2, at 2049, 2050 n. 15.

[5] 66 Stat. 426. "Unless provision is made for payment of the costs and expenses necessary to liquidate, administer and close the estate in the ensuing bankruptcy proceeding, ahead of all prior incurred and unpaid administration costs and expenses, there is always danger of a breakdown of administration. There should be assurance to the trustee in the ensuing proceeding that the costs and expenses incurred by him, such as bond and insurance premiums, costs of conducting a public sale and compensation for his services and for the services of his attorney, will be paid out of the assets liquidated and administered by him ahead of the prior unpaid costs and expenses." S. Rep. No. 1395, 82d Cong., 2d Sess., 5.

In 1966 Congress amended § 17 of the Act so as to make dischargeable all taxes due and owing more than three years prior to bankruptcy except, *inter alia*, those withheld or collected from others but not paid over. Act of July 5, 1966, 80 Stat. 270.

We think the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets. In *Nicholas* v. *United States,* 384 U. S. 678, 690–692, we rejected the claim of the United States that under § 7501 (a) of the Internal Revenue Code it was entitled to interest accruing after the arrangement under Chapter XI and during the bankruptcy. We so held because to allow interest would run counter to the "strong policy of § 64 (a)(1) of the Bankruptcy Act." *Id.,* at 691. To allow the present claimed priority for the principal would by the same token run counter to the grain of the Bankruptcy Act.

This construction conforms with a literal reading of the second sentence of § 7501 (a) which makes the amount of such fund payable "in the same manner and subject to the same provisions and limitations . . . as are applicable with respect to the taxes from which such fund arose." In conformity with *Nicholas* we read those words against the history of the Bankruptcy Act. So read, the fund is as subordinate as the taxes. See *In re Green,* 264 F. Supp. 849, 851.

What we decide today is also in accord with those decisions which hold that the specific priorities granted by Congress in the Bankruptcy Act govern generalized statutes giving the United States priority in a wide range of situations.[6] *Guarantee Co.* v. *Title Guaranty Co.,* 224 U. S. 152; *Davis* v. *Pringle,* 268 U. S. 315.

*Affirmed.*

---

[6] The competing Act in those cases was Rev. Stat. § 3466, which read: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all

Mr. Justice Blackmun, whom The Chief Justice, Mr. Justice Black, and Mr. Justice Stewart join, dissenting.

I cannot escape the conviction that the Court's ruling on this very narrow issue dishonors property of the United States and effects a windfall for those who benefit from the ruling.

The amount in issue consists of income and FICA taxes actually withheld from wages of employees. These are not taxes of the debtor. Were it not for the withholding scheme, the amounts would have been paid out to the employees as gross wages and it would have been their obligation, as it was prior to the adoption of withholding, to pay those taxes. Instead, the employer now withholds, and § 7501 (a) of the Internal Revenue Code of 1954, 26 U. S. C. § 7501 (a), appropriately impresses a trust upon the amounts withheld. The Court today defeats the trust only because the arrangement debtor in possession, a corporation which the Court has characterized as "an officer of the bankruptcy court," *Nicholas* v. *United States,* 384 U. S. 678, 690 (1966), flagrantly disobeyed the arrangement court's specific order to pay the withholding amounts into a separate bank account. The respondent trustee concedes that if the order had been obeyed, the trustee would have no case. Tr. of Oral Arg. 34.

The decision in *Nicholas* does not demand the result reached by the Court. That case concerned interest accruing during bankruptcy, not the tax on which the in-

the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

terest was asserted. The present decision is a long step down the road beyond *Nicholas.*

Neither am I persuaded by the suggestion made by the trustee, and seemingly reflected in the Court's opinion, that a contrary decision would leave little or nothing for administrative costs of the bankruptcy proceeding and therefore would deter orderly administration of bankrupt estates. I suspect that the fact of bankruptcy administration of a vast number of small- or no-asset cases is a sufficient refutation of that suggestion.

I find myself in accord with the views expressed by the Second, Sixth, and Ninth Circuits. *City of New York* v. *Rassner,* 127 F. 2d 703 (CA2 1942); *In re Airline-Arista Printing Corp.,* 267 F. 2d 333 (CA2 1959), aff'g 156 F. Supp. 403 (SDNY 1957); *Hercules Service Parts Corp.* v. *United States,* 202 F. 2d 938 (CA6 1953); *United States* v. *Sampsell,* 193 F. 2d 154 (CA9 1951). I would reverse.