**In the Matter of HATFIELD CONSTRUC-
TION COMPANY, Bankrupt.
No. 20043.**

United States District Court,
M. D. Georgia,
Macon Division.
July 30, 1973.

Richard M. Nichols, Macon, Ga., Trustee in Bankruptcy.

Arthur Bolton, Atty. Gen. of Ga., Gary B. Andrews, Asst. Atty. Gen., Atlanta, Ga., for Commissioner of Revenue, State of Ga.

OWENS, District Judge:

The October 30, 1972 order of the Referee in Bankruptcy which the Reve-

nue Commissioner of the State of Georgia has petitioned this court to review,[1] states:

"On March 14, 1972 the Revenue Commissioner of the State of Georgia (Commissioner) filed a reclamation petition asking that the trustee herein be directed to pay taxes in the amount of $1,015.71, under the provisions of the Georgia Retailers' and Consumers' Sales and Use Tax Act (Ga.Code Anno. § 92–3401a et seq.), hereafter called the "Sales and Use Tax Act". A stipulation of facts was filed with the Court on April 20, 1972.

"Hatfield Construction Company filed a voluntary petition in bankruptcy on August 21, 1971. It was in the construction business and on the date of bankruptcy had assets which under Section 70a of the Bankruptcy Act passed to the trustee herein by operation of law. On September 21, 1971 the bond of the trustee in this proceeding was approved by the Court. Thereafter on November 18, 1971 the trustee applied for authority to hold a sale of estate assets at public auction. By order dated December 10, 1971 this court approved such a sale subject to the confirmation of the Court. The sale was conducted in Gordon, Georgia on December 17, 1971 by an auctioneer, that is, Hudson & Marshall, Inc., Macon, Georgia, who was placed under bond by this Court. The auctioneer was required by the order of December 10, 1971 to turn all money received from sales over to the trustee. These orders resulted in the sale of tangible personal property as assets of the bankrupt estate in the amount of $48,881.00. This sum was given to the trustee by Hudson & Marshall, Inc. In an order dated February 2, 1972 the Court confirmed the sale.

"The Court never gave its consent to any collection of taxes under the Sales and Use Tax and the trustee has not been authorized to make any such collection by the Court. At the sale site on December 17, 1971 a representative of the Commissioner was present for the purpose of collecting a tax under the Sales and Use Tax Act from each purchaser. As the sale proceeded the representative of the Commissioner was furnished the name of each purchaser and the amount that purchaser paid for property sold to him. Hudson & Marshall, Inc., who conducted the sale at public auction, collected from each purchaser the amount of tax claimed by the representative of the Commissioner as being due under the Sales and Use Tax Act. This resulted in $1,015.71 which was given to the trustee, who deposited it in his account, and it is this sum the Commissioner seeks.

"The Commissioner contends the sale at public auction is subject to the Sales and Use Tax Act but the trustee contends otherwise. Both parties assume that the Georgia law covers the sale at public auction. This is upon the basis that the language of the Sales and Use Tax Act imposes a tax upon every sale at retail less exemptions.

\*  \*  \*  \*  \*  \*

"The question before the Court is the validity of the provisions of the Sales and Use Tax Act imposed upon the functions of the trustee in light of the paramount provisions of the Bankruptcy Act as passed by Congress. In this connection, it should be noted that the sale by the trustee was in the course of liquidation of the bankrupt estate as opposed to a sale in the course of conducting business. The

1. Title 11 U.S.C.A. § 67(c) provides: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto."

Commissioner and the trustee have stipulated this is so. The sale by the trustee was essential to liquidation and was made for the benefit of the bankrupt estate.

\* \* \* \* \* \*

"This Court holds that the trustee, functioning as an agent of the Court, is not subject to the provisions of the Sales and Use Tax Act for the reason that it imposes an undue burden upon the bankruptcy process and is in opposition to Congressional purpose as reflected by 28 U.S.C.A. § 960. There is no controlling case. The view of California State Board of Equalization v. Goggin, 9 Cir., 1957, 245 F.2d 44, is adopted. For views in accord with this see In re Payne Corporation, D.C.Ohio, 1953, 28 Ref.J. 82, 103; 4A Collier on Bankruptcy ¶70.97[4];

Paskay, Handbook for Trustees and Receivers in Bankruptcy, § 14.005; Note, Bankruptcy Sale as a Judicial Sale Free from Taxation, 1 Journal of Public Law 504 (1952); MacLachlan, Bankruptcy 349 (1956). But cf. Wurzel, Taxation during Bankruptcy Liquidation, 55 Harv.L.Rev. 1141, 1166–1169 (1942); Note, State Taxation of Bankruptcy Liquidation: Federalism Misconceived, 67 Yale L.J. 335 (1957)."

\* \* \* \* \* \*

Did the Referee err in so deciding and holding? In spite of the well-stated contentions of the Commissioner to the contrary, this court has for the reasons hereinafter stated concluded that the Referee did not err in so deciding.

The Referee and the parties assumed [2] that the liquidation sale in question is a sale within the meaning of Georgia's

---

2. The basis for that assumption is not in the record or the briefs of the parties. The court has researched the question and in particular has read the Administrative Rules and Regulations promulgated by the Commissioner. Those that seem to explain the Commissioner's contentions and this assumption are:

"560–12–1–.07 Casual Sale.

"(1) Invoking the rule of de minimis and because of the difficulties of administration and enforcement, no sales or use tax liability will be enforced against either the sellers or the purchaser in a casual sale transaction as herein defined, except as hereinafter provided.

"(2) A 'casual sale transaction' is:

"(a) A sale in which the tangible personal property involved was not acquired or held by the seller for use in the operation of his business or for resale; or

"(b) A sale of tangible personal property acquired or held by the seller for use in the operation of his business (not acquired or held for resale) if the total selling price of such sale and all such sales made during the calendar month of such sale and the preceding eleven calendar months does not exceed $500; or

"(c) A sale of tangible personal property acquired or held by the seller for use in the operation of his business (not acquired or held for resale) *if such sale is made in a complete and bona fide liquidation* of a business of the seller. For

purposes of this paragraph the term 'business' means a separate place of business subject to registration under the Act; the term 'a complete and bona fide liquidation' means the sale of all the assets of such business conducted over a period of time not exceeding thirty days from the date of the first sale of such assets, or a longer time if approved by the Commissioner as a bona fide liquidation.

"(3) *Notwithstanding* any other provision of these regulations, *when any seller sells* tangible personal property for use or consumption *through an agent,* broker or other person who is *regularly engaged in making sales of tangible personal property,* either as a principal or *as an agent,* then, such a sale will not be deemed a casual sale transaction.

"(4) Notwithstanding any other provisions of these regulations, if a sale is made by an individual who is employed by or associated with another person who is regularly engaged in the business of selling the same type of tangible personal property involved in such sale, then, such transaction will not be deemed a casual sale transaction and such individual shall register and comply with the obligations and liabilities of a dealer under the Act." (emphasis added). Hudson & Marshall, Inc. are unquestionably auctioneers regularly engaged in making sales of tangible personal property as agents for others.

Sales and Use Tax Act [3] and the Referee went on to decide the broader question of whether or not the State of Georgia can impose a sales tax on a federal court ordered liquidation sale by a trustee in bankruptcy. The Commissioner contends that the Referee's order is in error because:

(1) Georgia's sales tax is no burden upon a bankruptcy liquidation sale.

(2) Congress by enacting 28 U.S.C. § 960 [4] intended not to preclude state taxation of other activities but to unqualifiedly permit it in the instances defined by the statute. The normal bankruptcy liquidation process is encompassed by section 960 in general, and in particular by the phrase "conduct any business".

The Bankruptcy Act specifies the debts payable out of the bankrupt estate and the order of payment. Title 11 U.S.C.A. §§ 103 and 104. This specification is an overriding statement of federal policy. United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). To be allowable the sales tax in question must, therefore, fall within 11 U.S.C.A. §§ 103 or 104. Section 103 deals with "debts of the bankrupt". The subject liquidation sale was conducted after bankruptcy by the trustee, an officer [5] of this court; the resulting sales tax cannot possibly be a "debt of the bankrupt." Section 103 then is not to be considered. That leaves § 104 [6] as the only possible basis

---

3. Georgia Laws 1951, p. 360, as amended (1933 Georgia Code Annotated § 92–3401a et seq).

4. Title 28 U.S.C. § 960 provides: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

5. A trustee is an officer of the court by express provision of the bankruptcy act. See 11 U.S.C.A. § 1(22), which provides: "'Officer' shall include clerk, marshal, receiver, custodian, referee, and trustee, and the imposing of a duty upon, or the forbidding of an act by, any officer shall include his successor and any person authorized by law to perform the duties of such officer;" and 11 U.S.C.A. § 61 which provides: "The offices of referee and trustee are created. July 1, 1898, c. 541, § 33, 30 Stat. 555."

6. As possibly applicable here, 11 U.S.C.A. § 104 provides:
"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition;"
\* \* \* \* \*
"the costs and expenses of administration, including the trustee's expenses in opposing the bankrupt's discharge or in connection with the criminal prosecution of

an offense punishable under chapter 9 of Title 18, or an offense concerning the business or property of the bankrupt punishable under other laws, Federal or State;"
\* \* \* \* \*
"(2) wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; (3) where the confirmation of an arrangement or wage-earner plan or the bankrupt's discharge has been refused, revoked, or set aside upon the objection and through the efforts and at the cost and expense of one or more creditors, or, where through the efforts and at the cost and expense of one or more creditors, evidence shall have been adduced resulting in the conviction of any person of an offense under chapter 9 of Title 18, the reasonable costs and expenses of such creditors in obtaining such refusal, revocation, or setting aside, or in adducing such evidence; (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: *Provided*, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court: *And provided further*, That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; and (5)

for the Commissioner's claim. The fact that the sales taxes are not claimed to be due "by the bankrupt" narrows the possibilities under § 104 to "the costs and expenses of administration" portion of § 104(a)(1), making the ultimate question whether or not the post-adjudication in bankruptcy sales taxes in issue are properly allowable as costs and expenses of administration.

Preceding the enactment of what was 28 U.S.C.A. § 124a on June 18, 1934, and what is now 28 U.S.C.A. § 960 [7] on June 25, 1948, the liability of federal receivers or trustees under the bankruptcy act for payment of state and local taxes accruing during the period of their possession and control had been decided by the courts under varying factual situations with varying results. See Annotation, 85 L.Ed. 656 (1940). This, it seems, precipitated the introduction of the bill that became 28 U.S.C. § 124a. As to the proceedings in the House of Representatives, the Congressional Record states:

"Subjecting Receivers to State Taxation

"The Clerk called the next bill on the calendar, H.R. 8544, making receivers appointed by any United States courts and authorized to conduct any business or conducting any business subject to taxes levied by the State the same as if such business were conducted by private individuals or corporations.

"The SPEAKER pro tempore (Mr. Brown of Kentucky). Is there objection?

"Mr. TRUAX. I want to ask the gentlemen what particular class of people this bill proposes to make subject to taxation?

"Mr. McKEOWN. A great many receivers in oil cases have been held by the court not liable to pay taxes. They do not pay the gasoline taxes to the State. There are thousands of dollars being lost to the State, because these receivers in gasoline and oil cases are not liable to pay those taxes. In the receivers for bank cases they do not have to pay the taxes to the State.

"Mr. TRUAX. The bill is to collect taxes from corporations?

Mr. McKEOWN. Yes; in cases where there are receivers appointed to run the business.

"Mr. TRUAX. Well, I am hearily in favor of collecting taxes from corporations. I withdraw my objection.

"There being no further objection, the Clerk read the bill, as follows:

"*Be it enacted, etc.,* That any receiver appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation.

"Mr. WOLCOTT. Mr. Speaker, I offer the following amendment.

"The Clerk read as follows:

"Page 1, line 3, after the word 'receiver', insert the words 'liquidator, referee, trustee, or other officer or agent.'

"The amendment was agreed to.

"The bill as amended was ordered to be engrossed and read a third time,

---

debts owing to any person, including the United States, who by the laws of the United States in (sic) entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued with-

in three months before the date of bankruptcy."

7. Title 28 U.S.C.A. § 960 provides: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by any individual or corporation."

was read the third time, and passed, and a motion to reconsider was laid on the table." Congressional Record-House, April 16, 1934, p. 6656.

"Taxation of Receivers

"The Senate proceeded to consider the bill (H.R. 8544) making receivers appointed by any United States court and authorized to conduct any business, or conducting any business, subject to taxes levied by the State the same as if such businesses were conducted by private individuals or corporations, which had been reported from the Committee on the Judiciary with an amendment, on page 1, line 6, after the word 'shall', to insert 'from and after the enactment of this act', so as to make the bill read:

"*Be it enacted, etc.,* That any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said courts to conduct any business or who does conduct any business, shall, from and after the enactment of this act, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation.

"The amendment was agreed to.

"The amendment was ordered to be engrossed and the bill to be read a third time.

"The bill was read the third time and passed." Congressional Record-Senate, June 13, 1934, p. 11304.

"Receivers Appointed by Courts— Reconsideration and Passage of a Bill.

"Mr. GORE: Mr. President, yesterday I lodged a motion to reconsider Order of Business 1464, being House bill 8544, making receivers appointed by any United States courts and authorized to conduct any business or conducting any business subject to taxes levied by the State the same as if such business were conducted by private individuals or corporations. I desire to offer the amendment, which I send to the desk, when the motion to reconsider is considered by the Senate. I have conferred with the Chairman of the Judiciary Committee and both members of the subcommittee who considered the bill, and the amendment is acceptable to them. They are for it.

"The VICE PRESIDENT. Does the Senator desire to have the motion to reconsider brought up at this time?

"Mr. GORE. Yes, sir. I lodged the motion yesterday.

"The VICE PRESIDENT. Without objection, the vote whereby the bill was ordered to a third reading and passed will be reconsidered.

"Mr. BLACK. What is the bill?

"Mr. GORE. It relates to the taxation of property in the hands of a Federal receiver.

"Mr. BLACK. Very well.

"Mr. GORE. I now ask that the bill may be considered so that I may offer the amendment.

"The VICE PRESIDENT. Is there objection?

"There being no objection, the Senate proceeded to consider the bill.

"The VICE PRESIDENT. The amendment offered by the Senator from Oklahoma will be stated.

"The LEGISLATIVE CLERK. On page 2, line 2, after the word 'corporation', it is proposed to insert a colon and the following proviso:

"*Provided, however,* That nothing in this act contained shall be construed to prohibit or prejudice the collection of any such taxes which accrued prior to the approval of this act, in the event that the United States court having final jurisdiction of the subject matter under existing law should adjudge and decide that the imposition of such taxes was a valid exercise of the taxing power by the State or States, or by the civil subdivisions of the State or States imposing the same.

"The amendment was agreed to.

"The amendment was ordered to be engrossed, and the bill to be read a third time.

"The bill was read the third time and passed." Congressional Record-Senate, June 14, 1934, p. 11466.

"Conduct of Business by Receivers

"Mr. MONTAGUE. Mr. Speaker, I have been advised that the gentlemen from Illinois [Mr. Parsons], withdraws the objection that he entered a few moments ago to the consideration of the bill H.R. 8544, making receivers appointed by any United States courts and authorized to conduct any business, or conducting any business, subject to taxes levied by the State the same as if such business were conducted by private individuals or corporations, with a Senate amendment thereto, and I ask unanimous consent for the present consideration of the Senate amendment and to concur in the same.

"The SPEAKER. Is there objection?

"There was no objection.

"The SPEAKER. The Clerk will report the Senate amendment.

"The Clerk read as follows:

"Line 6, after the word 'shall', insert 'from and after the enactment of this act.'

"The SPEAKER. The question is on agreeing to the Senate amendment.

The Senate amendment was agreed to.

A motion to reconsider the vote by which the Senate amendment was concurred in was laid on the table."

Congressional Record-House, June 14, 1934, p. 12167.

The heart of the matter—the key to the intention of Congress—in this court's opinion is found in the following question and answer from the aforesaid.

"Mr. TRUAX. The bill is to collect taxes from corporations?

"Mr. McKEOWN: Yes, in cases where there are receivers appointed *to run the business.*" p. 6656 (emphasis added).

House of Representatives Report No. 1138, which accompanied this legislation, states:

"The Committee on the Judiciary, to whom was referred the bill (H.R. 8544) making receivers appointed by any United States courts and authorized to conduct any business, or conducting any business, subject to taxes levied by the State the same as if such business were conducted by private individuals or corporations, after consideration, report the same favorable to the House with the recommendation that the bill do pass.

"The purpose of this bill is *to subject businesses conducted under receivership* in Federal court to State and local taxation the same as if such businesses were being conducted by private individuals or corporations.

"The United States District Court for the Western District of Missouri in the case of Howe v. Atlantic, Pacific & Gulf Oil Co. et al (State of Missouri et al., Intervenors) 4 F.Supp. 162 recently held that a receiver *operating a gasoline-and-oil distributing business* under appointment by the Federal court was not liable for a sales tax on motor fuel levied by the State of Missouri. As a consequence of this decision, your committee is advised, the State of Missouri and other States having similar statutes are losing thousands of dollars of revenue per month.

"No good reason is perceived why a receiver should be permitted to operate under such an advantage as against his competitors not in receivership, and the States and local governments be deprived of this revenue." (emphasis added)

Senate Report No. 1372 quoted the House Report.

That Congress intended section 124a to apply to businesses that are run and not where someone is appointed just to liquidate, is further indicated by the

fact that Congress thereafter completely amended the Bankruptcy Act in 1938, and in so doing in providing for the compensation of receivers and trustees specified a greater compensation for "receivers appointed pursuant to clause (3) of subdivision (a) of section 11 of this title *who conduct the business* of the bankrupt as provided in clause (5) of subdivision (a) of section 11 [8] of this title . . ." and less for receivers who are mere custodians. Title 11 U.S. C.A. § 76(a)(1), (2) and (3). (emphasis added). Significantly those who are mere custodians and serve otherwise (short of conducting the business of the bankrupt) according to (2) "receive compensation by way of commissions upon the moneys disbursed or turned over to any persons, including lienholders, by them and also upon the moneys turned over by them or afterward *realized by the trustees from property turned over* in kind by them to the trustees . . ." Trustees, like receivers, receive a greater compensation when they "conduct the business of the bankrupts as provided in clause (5) of subdivision (a) of section 11 of this title . . .", 11 U.S.C.A. § 76(c)(2), and less compensation for normal administration. Congress thereby four years later again expressed its intention as to the words "conduct the business" and clearly said again that they contemplated the business being run, that they contemplated something more than the normal bankruptcy process of liquidation and payment of claims, the normal bankruptcy administration.

This construction is reinforced by Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), in which the Supreme Court commented upon the possible application of 28 U.S. C. § 960 to a case where a corporation operating a motel filed a petition for an arrangement; during the arrangement the corporation "was permitted to operate a business under authority of the bankruptcy court . . . Subsequently, the corporation was dispossessed of its property and the motel premises were closed." p. 679, 86 S.Ct. p. 1677. The corporation then filed a petition in bankruptcy; it was adjudged a bankrupt, and a trustee was appointed. There is no indication that the trustee ran the motel as a business establishment or did anything other than liquidate the bankrupt estate as in the case before this court. The United States claimed interest on taxes both before and after adjudication of bankruptcy. After denying the claim for interest after adjudication of bankruptcy, the court stated:

"[12] The result here is in no way inconsistent with the provisions of 28 USC § 960, which states that persons conducting a business under the authority of a federal court shall be taxed as if they were conducting a private business. As an officer of the bankruptcy court, the debtor in possession was fully subject to taxes and interest incurred during his operation of the business in the Chapter XI arrangement. Nothing in the general language of 28 USC § 960, however, necessarily subjects the trustee in the superseding bankruptcy proceeding to an obligation to pay additional interest on those prior taxes once a petition in bankruptcy has been filed. United States v. Kalishman, 346 F.2d 514; cf. New York v. Saper, 336 U.S. 328, 93 L.Ed. 710, 69 S.Ct. 554; United States v. General Engineering & Mfg. Co., 188 F.2d 80 (CA 8th Cir.), affd., 342 U.S. 912, 72 S.Ct. 358, 364, 96 L.Ed. 682, 686. In the absence of explicit congressional direction, the consideration of equity and administrative convenience established by our decisions under the Bankruptcy Act

---

8. Title 11 U.S.C.A. § 11 creates the United States courts as courts of bankruptcy with original jurisdiction to, among other things: "(5) Authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates, and allow such officers additional compensation for such services, as provided in section 76 of this title;"

clearly support this interpretation of the scope of this provision of the Judicial Code." *Nicholas, supra,* at 690, 86 S.Ct. at 1683, 16 L.Ed.2d at 863.

■ The trustee in the case under review in light of the intention of Congress did not "conduct the business" of the bankrupt. The trustee in the usual, normal bankruptcy manner did proceed to liquidate the bankrupt estate. As such 28 U.S.C. § 960 does not command the payment of the sales taxes in question and does not support the Commissioner's position.

■ Is the sales tax burdensome[9] upon the bankruptcy liquidation process? In deciding this question "equitable and practicable consideration, rather than mandatory absolutes . . .", *Southern Railway Company v. United States,* 306 F.2d 119, 126 (5th Cir. 1962), should be introduced. Equitably and practically this court views a sale such as that in question as a judicial sale conducted by the court pursuant to the bankruptcy laws of the United States for the purpose of converting the property of the bankrupt to cash to be distributed to all creditors in accordance with the priorities established by Congress in payment of all claims that existed preceding the conduct of the judicial sale by the trustee. This being the purpose of such a sale this court further views a sales tax on such a sale as an effort by the state through legislation to exact more than its fair share as a creditor from the liquidated sum, an effort to "skim off the top." Equitably and practically no state should be permitted to do so.

*Nicholas v. United States, supra,* also reinforces this conclusion. The sales tax in question, unlike the usual ad valorem property tax which is a lien upon the property itself, is an exaction by the state solely on account of the transfer of title by the trustee to produce money to pay the claims of creditors. It is in many respects like interest that the United States asked for, the extra that the State would like to have in addition to its usual property taxes. Mentally substitute "sales taxes" for "interest" and consider what the Supreme Court said in *Nicholas:*

"[3, 4] We believe that the decisions of this Court in Sexton and Saper reflect the broad equitable principle that *creditors should not be disadvantaged vis-à-vis one another* . . . In the context of interest-bearing debts, the equitable principle enunciated in Sexton and Saper rests at bottom on an awareness of the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate." *Id.,* 384 U. S. at 683, 86 S.Ct. at 1679, 16 L.Ed.2d at 859. (emphasis added).

Consider also the following portions of the well-reasoned opinion of the United States Court of Appeals for the Ninth Circuit in *California State Board of Equalization v. Goggin,* 245 F.2d 44 (9th Cir. 1957):

"Essentially, as applied to a liquidation sale in bankruptcy, this tax constitutes a burden on the process of liquidation. Whether the phrasing of the law imposes a liability upon the Trustee to pay a sales tax or indirectly places the burden upon the Trustee by naming the imposition a use tax, which the purchaser at a liquidating sale must pay, the net effect is identical."

\*　　\*　　\*　　\*　　\*　　\*

". . . any impost upon the essential liquidation process of the bankruptcy court is void."

\*　　\*　　\*　　\*　　\*　　\*

"Whatever the protean forms of a statute may be, or whatever subtle ingenuity of legislative tax advisors may suggest now or in the future, the tax is in fact based upon the sale; the

---

9. See Graves v. New York, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927.

sale is for the essential purpose of liquidating; the liquidation process was burdened thereby. The paramount authority in the bankruptcy field can be limited only by Congress. But, since Congress has already designated sales in the course of operation of a business as the sole area where the state is permitted to impose a tax of any type, essential sales in liquidation are inevitably free from such imposition."

\*   \*   \*   \*   \*   \*

"Now the cardinal purpose of the acts relating to bankruptcies is to liquidate the property of the debtor in order to accomplish equitable distribution of his assets to his creditors. Any act which hinders, delays or burdens the accomplishment of this vital purpose constitutes an unlawful interference with the process of the court of bankruptcy and is invalid." *Id.* at 45, 46.

In this court's opinion the Georgia Sales and Use Tax Act is burdensome upon the bankruptcy process.

Accordingly, the petition for review is denied and the decision of the Referee is affirmed.