**In the Matter of JACK LOPEZ WHOLESALE SHIRT LAUNDRY, INC., Bankrupt.**

**UNITED STATES of America**

v.

**ROYAL GLOBE INDEMNITY COMPANY.**

**Civ. A. No. 76–984.**

United States District Court, E. D. Pennsylvania.

June 14, 1977.

---

Robert N. DeLuca, Asst. U. S. Atty., Philadelphia, Pa., Joseph M. Gontram, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, D. C., for plaintiff.

S. Gordon Elkins, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

Before the court are cross motions for summary judgment. This controversy involves a claim by the United States of America ("Government") on a surety bond issued by Royal Globe Indemnity Company ("Royal"). The facts are not in dispute, and therefore, the matter is ripe for summary judgment.

On November 28, 1969, Jack Lopez Wholesale Shirt Laundry, Inc., filed a petition for a Chapter XI Arrangement pursuant to the Bankruptcy Act, 11 U.S.C. § 701 et seq. On December 1, 1969, William E. Chambers, Esquire, was appointed Receiver for the debtor and was ordered to give bond in the amount of $10,000. On the same date, Chambers as principal and Royal as surety posted a bond in the amount of $10,000. The condition of the bond provided:

THE CONDITION OF THIS OBLIGATION IS SUCH that whereas the above-named William E. Chambers, Esq. was, on the 1st day of December, 1969, appointed Receiver in the case pending in bankruptcy in said Court, wherein Jack Lopez Wholesale Shirt Laundry, Inc., T/A Pierce Laundry the bankrupt and he, the said William E. Chambers, Esq. has accepted said trust with all the duties and obligations pertaining thereunto:

NOW, THEREFORE, if the said William E. Chambers, Esq. as aforesaid, shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets and effects of the estate of the said bankrupt which shall come into his hands and possession, and shall in all respects faithfully perform all his official duties as said _____, then this obligation to be void; otherwise to remain in full force and virtue.

The order appointing Chambers as Receiver specifically authorized him "to pay all wages, salaries and compensation to managers, agents and employees of the debtor . . . [and] to pay all taxes lawfully incurred in the operation of the business . . . ."

The Receiver operated the business for approximately two months. The Receivership was unsuccessful, and on February 27, 1970, the Chapter XI proceedings were converted to straight bankruptcy and the debtor was adjudicated a bankrupt. Chambers was subsequently appointed Trustee of the bankrupt's estate.

The dispute in this case arises because the Receiver, during the period he operated the business of the debtor, paid certain wages to employees but failed to pay over to the Government, taxes imposed under the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3301 et seq., and deductions withheld for federal income taxes and FICA (Federal Insurance Contributions Act, 26 U.S.C. § 3101, et seq.) taxes. The net wages paid by the Receiver during the period of operation exceeded $30,000.

On November 24, 1970, the Government made assessments against the Receiver for unpaid taxes, penalties and interest in the total amount of $12,937.39. On November 25, 1970, the Government filed a claim in the Bankruptcy Court in the amount of $8,235.64 and sought priority as an expense of administration. This claim is less than the assessment made the previous day because the later claim did not include an additional assessment of taxes for the fourth quarter of 1969 and omitted interest.

On September 12, 1973, the Receiver filed the Operating Receiver's Report and the Operating Receiver's First & Final Account. On the same date Chambers, in his capacity as Trustee, filed the Trustee's First and Final Account showing a balance for distribution of $3,100.39. On October 17, 1973, a final meeting of creditors was held. At that meeting, an attorney for the Internal Revenue Service presented the claim in the amount of $8,235.64 and also made an oral motion to surcharge the Receiver. The Bankruptcy Court would not entertain the oral surcharge motion and directed the attorney for the Internal Revenue Service to file a written motion if he so desired. No written motion to surcharge the Receiver

was ever filed with the Bankruptcy Court. The claim of the Internal Revenue Service was allowed and accorded priority as an administrative expense. All Chapter XI claims given priority as an administrative expense were paid on a pro rata basis of 16.106%. The Government received $1,326.43.

Thereafter, William E. Chambers died, and on February 15, 1974, an order was entered appointing Fred Zimmerman as substituted Trustee. The substituted Trustee and his surety were discharged on March 10, 1976. Neither William E. Chambers nor his personal representative was ever discharged as Receiver or Trustee, and Chambers' surety, Royal, has not been released from liability on its bond. The failure of the surety to obtain a discharge of its obligation on the Receiver's bond is a fact which cannot be emphasized too strongly.

Neither the Government nor the I.R.S. took an appeal from or filed exceptions to the bankruptcy proceedings. In fact, no other action to collect the taxes due the Government has been taken except the institution of this suit on March 30, 1976.

■ Royal first suggests that this court lacks jurisdiction over the Government's claim. Royal's reasoning in this regard is somewhat confused because it is based on Bankruptcy Rule 11–20(d) under which the *debtor* may be required to post security to indemnify or protect the estate. A debtor's bond is authorized by § 326 of the Bankruptcy Act, 11 U.S.C. § 726. That type of bond is not involved in this case. The bond in this case is posted by the Receiver, not by the debtor, pursuant to Bankruptcy Rule 11–20(a). In any event, a suit by the Government on the surety bond is properly cognizable in the United States District Court without the usual jurisdictional requirements of diversity of citizenship and amount in controversy. Collier on Bankruptcy ¶ 50.09[1]. Jurisdiction is not limited to the Bankruptcy Court. Although a Bankruptcy Court has jurisdiction pursuant to 11 U.S.C. § 78(n) to adjudicate claims made against a Receiver's surety, a United States District Court also has plenary jurisdiction to entertain such suits. *See* footnote 3, *In Re Martinez,* 311 F.Supp. 317, 319 (D.P.R.1970).

■ Royal's second argument is that the bond provides indemnification to the estate but not to a creditor of the estate. Royal's reliance on this argument arises from its failure to distinguish between a bond posted by the debtor under Rule 11–20(d) and the bond posted by the Receiver under Rule 11–20(a). In regard to bonds posted by Receivers, it is clear that an individual suitor may proceed in the name of the United States against the surety and the United States may so proceed where it has an actual beneficial interest. In this regard Collier, *supra,* states:

> Although an action on a bond may be brought either by the United States for the use of third persons or by an individual suitor in the name of the United States, it should be remembered that the United States has no actual beneficial interest in the enforcement of these bonds.

However, the exception set forth in footnote 6 is important. Footnote 6 provides:

> *Except* of course where the United States, like any other party, has an actual beneficial interest. (Emphasis supplied.)

The surety's reliance on the cases of *Martin v. National Surety Corporation,* 437 Pa. 159, 262 A.2d 672 (1970) and *VanCor, Inc. v. American Casualty Co. of Reading,* 417 Pa. 408, 208 A.2d 267 (1965) is misplaced. In the *Martin* case, the bond was issued to cover *indemnification* to the Commonwealth of Pennsylvania, who had paid over to the surety company the entire sum due under nine highway construction contracts. Clearly, that case has nothing to do with the procedure permitted under the enforcement of a Receiver's bond in a Chapter XI arrangement. In the *VanCor* case the plaintiff was the general contractor who dealt directly with the school authority. The bankrupt was an electrical contractor who dealt directly with the school authority and was not a subcontractor to the general. The plaintiff sought to collect from the electrical contractor's performance and pay-

ment bond for delay damages plaintiff suffered because of the bankruptcy of the electrical contractor. The Pennsylvania Supreme Court held that the general contractor could not maintain a claim for delay damages against the performance and payment bond of the bankrupt electrical contractor. That case, of course, also has no application to a receiver's bond and was decided in a context totally different from the case at bar.

■ The third argument of the surety is that the Receiver did not violate the conditions of his bond. Royal argues that if the Receiver files an account and the account is confirmed, he has complied with the conditions of the bond. I disagree. The bond and Rule 11–20(a) specifically require the Receiver to "faithfully perform all his official duties." By statute an employer is required to pay over to the United States any amount withheld from the wages of employees for federal tax purposes. *See* 26 U.S.C. § 7501(a). Also, the Receiver as an employer is required by statute to pay over to the Government FICA and FUTA taxes. *See* 26 U.S.C. § 3102, § 3301, *et seq.* In my view, the Receiver had an official duty to pay federal taxes imposed both by the terms of the order, wherein he was empowered to make tax payments to the federal government, and also by the foregoing statutes.

In *United States v. Western Surety Co.,* 65–2 U.S.T.C. ¶ 9644 (D.Minn.1965), the Receiver failed to pay over federal income withholding and FICA taxes to the United States, which taxes accrued during the Receiver's operation of the business. The court found that the Receiver's failure to pay over the taxes to the United States was a breach of the Receiver's duties as Receiver of the estate's assets, and therefore, held the surety liable on its bond to the United States. It is true that the *Western Surety* case involves a state receivership and not a federal bankruptcy proceeding. Nevertheless, it stands for the principle that a Receiver who fails to make proper tax payments to the United States obligates himself and his surety to the United States for the dereliction of that duty.

■ Another case on this subject is *In Re Interstate Mfg., Inc.,* 69–1 U.S.T.C. ¶ 9333 (M.D.1969). This decision, by a bankruptcy referee, held that a surety for a receiver, who violated duties similar to those imposed on the Receiver in the within case, was liable to the extent of its bond for money withheld from employees or collected from others for taxes but not paid over to the Government. The Referee further held that the surety's obligations were not excused by the failure of the Internal Revenue Service to pursue other remedies. Therefore, a Receiver violates the conditions of his bond when he fails to pay over taxes withheld from employees and fails to make other tax payments to the Government in regard to operating a debtor's business.

■ The fourth defense of the surety is that the claim of the Government is against the Receiver in his capacity as an individual and not in his capacity as a Receiver. According to Royal, the bond does not afford protection unless the wrongful act is perpetrated by the Receiver in his capacity as a Receiver. The surety is correct in its general statement of law in this regard. The difficulty with the surety's argument, however, is that a Receiver who is operating a debtor's business pursuant to a Chapter XI arrangement does act in his official capacity when he is specifically authorized but fails to pay to the Government income tax withheld from employees wages and other taxes due by virtue of the operation of the business.

■ The fifth defense of Royal is based on concepts set forth in *United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). In *Randall,* it was held that claims due the United States for unpaid taxes are accorded less of a priority than administration expenses even though the unpaid taxes accrued during the Receiver's administration. The bankruptcy judge's Order of Final Disposition treated the Government's tax claim for withholding, FICA and FUTA taxes incurred by the operating Receiver as an administration ex-

pense. Thus, according to the surety, the bankruptcy judge's Order gave the Government a higher priority than that to which it was entitled. Consequently, the surety argues that the Government received more than its due and there is no further liability on the surety. However, the claim of the United States may be brought directly against the employer who in this case is the Receiver. It is not a question of depleting the assets in the hands of the Trustee to prefer tax claims over administrative claims. It is a question of proceeding against the Receiver and his surety for violation of official duties. In other words, under the *Randall* case, the Government's claim for taxes is subordinate to the costs and expenses of administration. This concept does not preclude the Government from proceeding against the Receiver or his surety on the basis that the Receiver violated his official duties.

Finally, the surety argues that even if it is liable on its bond for unpaid taxes, the claim of the Government does not exceed the face amount of the bond which is $10,000. The surety argues that interest and penalties are not recoverable where there are inadequate funds to pay all administrative expenses. Again, while this may be a correct statement of the law, the claim made by the Government is not against the bankrupt estate but is against the surety of the Receiver. Therefore, the cases of *Missouri v. Earhart,* 111 F.2d 992 (8th Cir. 1940), *cert. denied,* 311 U.S. 676, 61 S.Ct. 43, 85 L.Ed. 435 (1940), and *Matter of Tom's Villa Rosa, Inc.,* 198 F.Supp. 137 (D.Conn. 1961), are not applicable because those cases each deal with claims against the assets of a bankrupt's estate. Furthermore, the schedules attached to the Government's motion evidence unpaid tax claims in excess of $10,000 (the face amount of the bond) and the surety has not disputed this calculation with any degree of specificity.

■ Royal also contends that the concept of laches bars the Government's claim. The rationale of this defense is that if the Government had elected to proceed against the Receiver and the surety before distribu-tion was confirmed, the surety would have been in a position to recoup some of its losses through subrogation. This argument is rejected for two reasons. First, the defense of laches does not run against the federal government. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Secondly, the distribution ordered by the bankruptcy judge in the present case was favorable to the surety, and therefore, no additional claim against the funds distributed by the Trustee could have been effectuated.

Judgment will be entered in favor of the Government and against Royal in the amount of $10,000.