In re McLEAN INDUSTRIES, INC., et al., Debtors.

Bankruptcy Nos. 86B–12238 (HCB) to 86B–12241 (HCB).

United States Bankruptcy Court, S.D. New York.

May 16, 1989.

See also, Bkrtcy., 96 B.R. 440.

Alan W. Kornberg, Milbank, Tweed, Hadley & McClay, New York City, for debtors.

Allen L. Gropper, White & Case, New York City, for Unsecured Creditors' Committee.

Laurence J. Kaiser, Kronish, Lieb, Weiner & Hellman, New York City, for Debt Holders' Committee.

James D. Benak, Omaha, Neb., Kenneth P. Fremont, Kross & Tract, New York City, for Union Pacific and Missouri Pacific Railroad Co.

**HOWARD C. BUSCHMAN, III,** Bankruptcy Judge.

The Union Pacific Railroad Company ("Union Pacific") and the Missouri Pacific Railroad Company ("Missouri Pacific") (jointly referred to as the "Railroads") have objected to the Debtors' First Amended Plan of Reorganization (the "Plan"). The Union Pacific has filed proofs of claim asserting a priority senior to unsecured claims but junior to administrative claims for $6,152,854.18 for transportation services, transporting containers, performed within the six month period prior to the filing of the Debtors' reorganization petitions on November 24, 1986.[1] The Missouri Pacific has filed proofs of claim asserting an administrative priority of $228,046.29 (reflected in Union Pacific total above) for similar services performed within the same six month period. They object to the plan on the ground that it does not contain a priority class of holders of claims for providing goods and services within the six month period prior to bankruptcy or substantially similar claims. In support, they argue that they are entitled to priority by virtue of the so-called Six Months Rule. The objection is, however, without merit for each of the several reasons discussed below.

■ The Six Months Rule arose in railroad equity receivership cases from the practice of authorizing a receiver to pay certain necessary expenses incurred in the period immediately preceding the receivership. *See In re Boston & Maine Corp.,* 634 F.2d 1359, 1366–79 (1st Cir.1980) *cert. denied,* 450 U.S. 982, 101 S.Ct. 1518, 67 L.Ed.2d 817 (1981) (discussing cases). It is codified in 11 U.S.C. § 1171(b). That section is contained in Subchapter IV of Chapter 11 and applies only to railroad reorganization cases; it is not applicable to other Chapter 11 cases even though the debtor may have been engaged in the transportation business. *B & W. Enterprises, Inc. v. Goodman Oil Co. (In re B & W Enterprises, Inc.),* 713 F.2d 534 (9th Cir.1983), 11 U.S.C. § 103(g) ("Subchapter IV of Chapter 11 of this title applies only in a case under such chapter concerning a railroad").

■ Nevertheless, the Railroads argue that the Six Months Rule applies in the maritime bankruptcy of the debtor United States Lines because they, as supply creditors, expected their charges to be paid from current revenues while secured lenders expect to be paid from net income and that goods and services provided in the six months before bankruptcy enabled United States Lines to continue as a going concern. For those reasons, they claim that the rule in this Circuit under the former Bankruptcy Act permitting the application of the Six Months Rule to companies providing a public service continues to apply under the Bankruptcy Code. 11 U.S.C. § 101 *et seq.* (1986).

However appealing might be those notions, Congress has not chosen to adopt them. The Bankruptcy Code explicitly lists priorities applicable in Chapter 11. *See* 11 U.S.C. §§ 503, 507. Claims of creditors within the Six Months Rule are not so listed. A new priority varying the statutory scheme is not to be recognized. *See United States v. Randall,* 401 U.S. 513,

---

1. This sum of $6,152,854.18 covers transportation services rendered to United States Lines within six months prior to its filing its bankruptcy petition by both Union Pacific Railroad Company and Missouri pacific Railroad Company. *See* Memorandum Brief in Support of Objections of Union Pacific Railroad Company and Missouri Pacific Railroad Company to Debtors' First Restated and Amended Plan of Reorganization (the "Union Pacific Memorandum") at 2 (referring to both railroads collectively as "Union Pacific" and calculating services rendered by "Union Pacific" to U.S. Lines in the amount of $6,152,854.19).

517 91 S.Ct. 991, 994, 28 L.Ed.2d 273 (1971); *Pennsylvania Railroad Company v. Chicago Express, Inc., (In re Chicago Express, Inc.,* 332 F.2d 276 (2d Cir.1964); *In re Pusey and Jones Corp.,* 295 F.2d 479 (3d Cir.1961).

Thus, this Circuit has expressly rejected a railroad's claim for priority treatment of freight charges owed to it by a non-railroad debtor for transportation services similar to those performed by the Railroads here. In *Chicago Express, Inc.,* a railroad furnished "piggy back" rail carriage to the debtor motor carrier's trailers. The railroad based its claim to priority on two alternative theories: (1) that its share of amounts collected by the debtor from shippers constituted a trust fund and (2) that it deserved priority under the "Six Months Rule." Both theories were rejected. As to the first, the Court held that the Debtor was under no duty to hold amounts due to the railroad in trust. As to the second theory, the Court found that the Six Months Rule had no application in a Chapter XI proceeding under the Bankruptcy Act. 332 F.2d at 277–78. Since priorities "are a creature of statute," *id.* at 278, the Court held that the railroad claimant could only prevail if it could bring its claim within one of the classes of priorities created by Congress.

In addition, since only in railroad reorganization cases did Congress add, in § 1171(b), such a priority, it also follows that Congress in adopting the Bankruptcy Code must have focused on the issue and excluded the priority the railroads seek. The claims advanced by the railroads are, moreover, akin to a claim for full payment actually addressed and rejected by Congress. It appears that Union Pacific and Missouri Pacific provided transportation services for United States Lines. They are like those railroads holding claims for interline balances owed by a debtor railroad. Congress, in enacting the Bankruptcy Code, expressly rejected a proposal that debtor railroads be required to pay interline balances stating that to do so would distort the central bankruptcy principle of equality of treatment of unsecured creditors. *Boston & Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562, 568–69 (Coffey, J. concurring and dissenting).

Nor can it be said that it is the rule in this Circuit that the Six Months Rule applies under the Code in a non-railroad case. First, even were it clear that the rule applied under the former Bankruptcy Act, Congress' having explicitly stated the applicable priorities and having chosen to continue the Six Months Rule only in 11 U.S.C. § 1171(b) is a clear mark of its intention to so limit the rule and legislatively overrule prior judicial authority. *United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

It is, moreover, hardly clear that the Second Circuit would apply the Six Months Rule to a case such as this. In *Dudley v. Mealey,* 147 F.2d 268 (2d Cir.1945), on which the Railroads rely, a plan of reorganization of a hotel under Chapter X of the former Bankruptcy Act was objected to on the ground, *inter alia,* that it accorded a priority to unsecured creditors a short time before to the appointment of a receiver prior to bankruptcy. In affirming the district court's discretion to approve the plan, the Court, *per* Judge Learned Hand stated that the Six Months Rule could apply in order to preserve the going concern value of the business, stating

"And this is a particularly apt consideration in a reorganization, when the debtor is not to be liquidated, and when the very purpose of the action is to continue the existing business in the interest of the secured creditors—and, as here, of them alone."

147 F.2d at 271. Here, the debtors' Disclosure Statement, to which the Railroads voiced no objection in this respect, shows that the assets of United States Lines have been nearly completely liquidated. The center piece of its reorganization is its net operating losses and the ability to attract investment capital. It cannot be said that the railroads contributed anything that redounded to the benefit of secured or unsecured creditors.

Subsequent authority in the Second Circuit under the former Bankruptcy Act has

sharply limited *Dudley* to its facts and circumstances. Even in railroad reorganization cases, the Supreme Court wrote early on that the Court's "discretion to ... [authorize payment of pre-petition expenses] should be exercized with very great care." *Miltenberger v. Logansport C. & S.W. Ry.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). Thus, under the former Bankruptcy Act, it was held that the *Dudley* Court's extension of the Six Months Rule to non-railroad reorganization cases did not apply where to do so "would unfairly favor vendor claims totalling approximately $3,300,000 to the detriment of other creditors and the present plan to reorganize the debtors." *In re Yale Express System, Inc.*, 342 F.Supp. 972, 975 (S.D.N.Y.1972). Nor did it apply where the supplier's insistence on cash pre-petition would not have jeopardized the assets of lienholders. *In re North Atlantic and Gulf Steamship Co., Inc.*, 200 F.Supp. 818, 822 (S.D.N.Y.1962). And, as held in *Chicago Express*, no priority is to be granted for pre-petition transportation charges.

Here, it is undisputed that the Debtors require all their cash to confirm. Creation of another class superior to unsecured creditors only penalizes those creditors whose return is minimal and not even secured creditors are being paid in full. *Dudley*, therefore, would not apply.

It is thus clear that the Union Pacific and Missouri Pacific claims are not entitled to the priority they seek and that their objections are, concomitantly, without merit. Congress did not grant this Court the discretion to apply the Six Months Rule. Even if it had, it would be an abuse of discretion to apply the Six Months Rule here. An order confirming the Plan is being entered concurrently with this decision.