### YONKERS BOARD OF EDUCATION, Plaintiff,

### v.

### RICHMOND CHILDREN'S CENTER, INC., Defendant.

### No. 85 Civ. 5561–CLB.

United States District Court, S.D. New York.

Jan. 6, 1986.

Lawrence W. Thomas, Gregory Keefe, Anderson, Banks, Moore, Curran & Hollis, Mount Kisco, N.Y., for plaintiff.

Edward S. Rudofsky, Zane & Rudofsky, New York City, for Richmond Children's Center.

Kevin Nash, Finkel, Goldstein & Berzow, New York City, for Creditor's Committee.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Yonkers Board of Education (hereinafter "Yonkers") appeals from an order of the Bankruptcy Court (Schwartzberg, J.) denying a turnover of funds to it by the Debtor in this Chapter 11 proceeding, Richmond Children's Center, Inc. ("Debtor" or "Richmond"). Familiarity of the reader with Judge Schwartzberg's decision dated May 14, 1985 is assumed.

Richmond cares for children who are mentally retarded and maintains a so-called "intermediate care facility" for resident treatment in the City of Yonkers. The public education of such children is governed by New York State Education Law § 3202(5). Certain of the patients resident in Richmond's facility attend the Yonkers public schools, although not domiciled in Yonkers. They are charged tuition by Yonkers, billed in the first instance to Richmond, which in turn checks the invoice to verify the attendance and submits it to the New York State Department of Education. That Department in the 1982–83 year issued checks to Richmond, accompanied by letters of transmittal which informed Richmond that "[t]his is a 'pass-through' payment to the Yonkers P.S." The State Education Department provides 100% reimbursement and that Department in turn charges back in part against the school districts in which the children cared for at Richmond are domiciled. All this is accomplished under a statutory scheme both detailed and convoluted, which need not concern us directly at this time.

The Bankruptcy Court found that on May 2, 1983 Richmond deposited a check from the State Education Department payable to its order in the amount of $141,-499.65, accompanied by the letter informing Richmond that it was a "pass-through"; that it commingled this money with other funds in its bank account; and that it filed its petition on June 10, 1983, listing Yonkers as an unsecured creditor.

There were no disputed issues of fact in the proceedings before the Bankruptcy Judge. Yonkers sought to impose a constructive trust on this "pass-through" payment and the Bankruptcy Judge found that:

"The relevant subsections of New York Education Law § 3202(5)(d) do not create an express statutory trust on reimbursement funds received by Richmond ... from the State Education Department. Additionally, the contract for educational

services between Richmond and the City of Yonkers, the letter from the Education Department describing the reimbursement as a 'pass-through payment,' and the statutory obligation on the City to educate *Richmond's children* do not form the basis for the imposition of a constructive trust for the City's benefit." (Conclusion of Law No. 2). [Emphasis added].

The Judge accordingly concluded that Yonkers was a general, unsecured creditor.

■ This Court believes that the legal conclusion reached misinterprets the total effect of the circumstances surrounding this reimbursement payment. The Bankruptcy Court recognized that under the legislative history of the Code, which is cited in relevant part in its opinion, a constructive trust, determined in accordance with state law, is not a part of the Debtor's estate. The example given in the Congressional history and quoted in the opinion below is as follows:

"For example, if the debtor has incurred medical bills that were covered by insurance and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill, for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed." *See* 1978 *U.S. Code Cong. & Adm.News*, 5787, 5868, 6324.

This is just such a case. The children are *not* Richmond's children. They are specific children entitled to a public education in their own right at the expense of the State of New York and the school districts of their domicile, for whose medical care Richmond is being separately paid by others under a separate contract. By attending this care facility they did not lose their right to a free public education.

For reasons of its own, the state required care facilities such as Richmond to enter into a "contract" with school districts such as Yonkers. The contract, which was surplus except that it imposed on the intermediate care facility the duty to keep records and provide information, and to seek and obtain any grants or funds available to reduce school district costs, imposed no duty of payment out of its own funds on Richmond, gave no benefit to Richmond, and gave the children nothing more than that to which they were already entitled under state law.[1]

In a memorandum delivered by the State Education Department to all such facilities, the Department noted that: "The ICF/DD [in this case Richmond] immediately 'passes through' all payments received from this office to the school district with which it contracted." Record at p. 78. It is undisputed that this directive was given to Richmond and all similarly situated intermediate care facilities. The "pass-through" status was also recognized in the letter of transmittal forwarding the check.

■ Undoubtedly the paper work in this case could have been done better, tested, as it is here, by hindsight. However, the construction given statutes by the agency responsible for their administration is, under New York law, entitled to some deference, and this Court must apply the New York law affecting constructive trusts in this context. Under the contract, no debt is owed to the City by Richmond; the services provided by Yonkers were solely for the benefit of the children residing in the intermediate care facility, and not for the facility itself. The Debtor's obligation was merely that of auditing claims and passing through payments, and the Debtor properly should be regarded as an intermediary.

It is noted that under § 43 of the New York State Finance Law, "money appropriated for a specific purpose shall not be

---

**1.** The standard form of contract submitted by the State for use by such facilities, but not actually used by Yonkers, contains a provision to the effect that "[u]pon receipt of monies from the State Education Department pursuant to a claim made under Chapter 721 of the Laws of 1979, the [intermediate care facility] shall within ten days transmit such funds to the [Board of Education of the school district with which it contracted]." (¶ Third b, Record at p. 86).

used for any other purpose...." The purpose of the appropriation, in this case well-known to the Debtor, was to provide a free public education for these children. In the entire context of the relationships between the parties, viewed against the background fact that the State was making 100% reimbursement out of public funds, there was no statutory authorization for any commingling of these funds with Richmond's own operational funds.

■ The Court concludes, as a matter of law, that under the New York statutory scheme, as interpreted and applied by the New York State Education Department, money paid to a care facility by the State pursuant to § 3202(5)(d) of the Education Law is not for the financial benefit of the facility, but intended rather for the sole benefit of the children, and known so to be by the recipients. Accordingly, it constitutes a constructive trust in the hands of the facility for payment to the school district.

■ This Court attaches no significance to the point relied upon by the court below in effect that the legislature, which understands how to create an *express* trust, could have done the job better had it reflected upon the likelihood that such private care providers are quite likely to become insolvent. A constructive trust, which this Court here finds to exist, arises out of operation of law and requires no special words or intentions to create it.

The record before this Court is unclear as to whether a complete or partial turnover of these funds from the Debtor would have been feasible as of the time of filing the Petition, based on a reconstruction of the account, assuming last in first out. However, to the extent that any of the funds are traceable as in the Debtor's possession, as of the date of filing, the Bankruptcy Court is instructed to exclude those sums from the Debtor's estate and to turn over to Yonkers these pass-through funds intended for that City.

The order of the Bankruptcy Court appealed is reversed and the case remanded for proceedings consistent with the foregoing.

So Ordered.