**In re McLEAN INDUSTRIES, INC., et al., Debtors.**

**AMERICAN HULL INSURANCE SYNDICATE, Arkwright–Boston Manufacturers Mutual Insurance Company, New Hampshire Insurance Company, New York Marine Managers, Inc., United States Fidelity & Guaranty Co., Ranger Insurance Company, Underwriters at Lloyd's and Institute Companies Through Price Forbes Limited, Plaintiffs,**

v.

**UNITED STATES LINES, INC., Defendant.**

**Bankruptcy Nos. 86 B 12238 (HCB)–86 B 12241 (HCB).**
**Adv. No. 87–5039A.**

United States Bankruptcy Court, S.D. New York.

Feb. 19, 1987.

Milbank, Tweed, Hadley & McCloy by Teresa A. Blasberg, New York City, for debtors.

Thacher Proffitt & Wood by Sheldon A. Vogel, Raymond S. Jackson, Jr., New York City, for Hull and Machinery Underwriters of the S.S. AMERICAN APOLLO.

DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Plaintiffs, which provided hull and machinery insurance coverage to the S.S. AMERICAN APOLLO, a vessel owned and operated by United States Lines, Inc. (the "Debtor"), commenced this adversary proceeding seeking reclamation of some $1,899,448.22 which they had paid to the Debtor pursuant to the insurance policy. A temporary restraining order, issued by this Court on January 27, 1987, restrained the Debtor from making withdrawals from its account at the First National Bank of

Atlanta where this sum is on deposit, which would reduce that account below the lower of $1,899,448.22 or the lowest balance in that account between October 10, 1986 and January 27, 1987, pending the hearing on a preliminary injunction on February 4, 1987 and the determination of that hearing. The temporary restraining order was conditioned on the Plaintiffs' posting a bond of $10,000 with the Clerk of the Court, which they have apparently done. The Debtor opposes the preliminary injunction, stating that the Plaintiffs have failed to meet the standard for its issuance.

## I.

The underlying facts do not appear to be in dispute. The steamship S.S. AMERICAN APOLLO grounded in the Panama Canal on October 1, 1980 and sustained substantial damage, some of which was within the hull and machinery insurance coverage provided by the plaintiffs. The Plaintiffs thereafter paid $1,963,420.29 to the Debtor pursuant to the insurance policy.

The Debtor then made a claim against the Panama Canal Commission ("PCC") for these damages. The claim was settled for $5,750,000, which was paid by the PCC to the Debtor on October 10, 1986 by wire transfer to the Debtor's account at the First National Bank of Atlanta.

With the agreement of the parties, the firm of Alexander & Alexander thereupon surveyed the vessel and determined that the Plaintiffs were entitled to $1,899,448.22 of the settlement proceeds. No payment has been made by the Debtor.

On November 24, 1986, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (1986) (the "Code"). Plaintiffs filed their complaint on January 30, 1987. Claiming a constructive trust theory, they seek judgment ordering the payment of the lowest balance in the account at First National Bank of Atlanta, up to a maximum of $1,899,448.22.

The Plaintiffs support the relief requested under general insurance law. They assert that the Debtor holds $1,899,448.22 in trust for them and that withdrawals made by the Debtor from this bank account, to the extent that they would reduce the balance below this sum, will cause them irreparable injury. Thus, they claim that the preliminary injunction preventing the Debtor from depleting this account below the lesser of $1,899,448.22 or the lowest balance in that account between October 10, 1986 and January 27, 1987, would preserve the status quo until this Court determines their right to reclamation.

The Debtor, while admitting that this sum is owed to the Plaintiffs, contests the motion, asserting that the Plaintiffs will not succeed on the merits because a breach of a subrogation agreement will not support the imposition of a constructive trust. Further, it insists that the Plaintiffs do not have a superior equity in the proceeds, and that their rights are no greater than those of other unsecured creditors.

## II.

In this Circuit, a preliminary injunction will not issue unless the movant shows irreparable injury and either probability of success on the merits or the raising of sufficiently complex issues requiring further litigation with the balance of equities tipping in favor of the movant. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025–26 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Here, the Plaintiffs have met this standard. Their motion should be granted.

General insurance law governs this situation. "Where an insured has received from the insurer an amount which is a full satisfaction for the loss sustained, he will, upon recovery from the wrongdoer, hold so much of such sum as may be necessary to reimburse the insurer in trust for the latter." 16 *Couch on Insurance 2d*, § 61:29 (Rev.Ed.1983). *See* 6A J.A. Appleman and J. Appleman, *Insurance Law and Practice* § 4096 (Rev.Ed.1972). Such a trust is deemed to be a constructive trust, for it arises out of an equitable duty to hold property for or to convey it to another. *United States v. Fontana*, 528 F.Supp.

137, 143 (S.D.N.Y.1981); *Yonkers Board of Education v. Richmond Children's Center, Inc.*, 58 B.R. 980, 982 (S.D.N.Y.1986). *See Restatement (Second) of Trusts*, § 1 Comment e (1959).

Thus, when the Debtor received the settlement proceeds from PCC, that part of those proceeds which equalled the amount determined to be owing to the Plaintiffs, the Debtor was charged with the equitable duty of restitution of such amount, which may be enforced by the remedy of imposition of a constructive trust to the *res.*

The Debtor admits its obligation to return the funds, but protests the imposition of a constructive trust and asserts that the Plaintiffs must be paid along with the other general unsecured creditors, not ahead of them. The cases it cites to support this position, however, are inapposite, for neither case involves the right of an insurer who has paid an insured who thereupon recovers from the wrongdoer. Also, none of the fears raised by the courts in *In re Black & Geddes, Inc.*, 35 B.R. 830, 836 (Bankr.S.D.N.Y.1984) and *In re PLM/Hotel—Motel Division, Inc.*, 35 B.R. 499, 502 (Bankr.E.D.Tenn.1983), are present here. Specifically, because of the special status conferred upon insurers at common law, namely, the remedy of a trust imposition and the duty of restitution by an insured who is paid both by the insurer and the tortfeasor for the same wrong, an insurer is not to be catagorized with the rest of the creditor body to the extent that a *res* exists to which the trust can attach.

The Debtor's assertion that there can be no *res* because it commingled the settlement funds with its other funds is without merit. As Collier explains,

> The situation frequently occurs where trust funds have been traced into a general bank account of the debtor. The following general principles have been applied. The bankruptcy court will follow the trust fund and decree restitution where the amount of the deposit has at all times since the intermingling of funds equaled or exceeded the amount of the trust fund. But where, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account. In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources cannot be subjected to the equitable claim of the cestui que trust. If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test.

4 *Collier on Bankruptcy,* ¶ 541.13 at 541–73 (15th ed. 1986) (footnote omitted).

The Debtor's further assertion that the Plaintiffs ought to have included a formal trust provision in the insurance policy if they wanted this protection and, in failing to do so, are no better positioned than general unsecured creditors is also without merit. The imposition of a constructive trust does not depend upon the existence of a trust agreement. *Yonkers Board of Education v. Richmond Children's Center, Inc.*, 58 B.R. at 983; *Schwartz & Weiss v. Branch Motor Express Company (In re Branch Motor Express Company)*, 51 B.R. 146, 148 (Bankr.S.D.N.Y.1985).

Thus, the Plaintiffs have demonstrated the likelihood of success on the merits. This being so, the possibility of a diminution of the *res* in which the Plaintiffs have an interest should the Debtor further reduce the balance of this account constitutes irreparable injury, by reducing or eliminating the amount to which a trust can attach. To eliminate this possibility and, thus, protect the Plaintiffs' right to the remedy of a trust in these proceeds, a preliminary injunction must issue to preserve the status quo pending a determination of the underlying merits. Accordingly, the Plaintiffs' motion must be, and is hereby, granted. It is

SO ORDERED.