In the Matter of WELLINGTON FOODS, INC., Debtor.

**Wiley A. WASDEN, III, Plaintiff,**

v.

**FLORIDA DEPARTMENT OF REVENUE, Georgia Department of Revenue, and Internal Revenue Service, Defendants.**

Bankruptcy No. 91–40732.
Adv. No. 93–4070.

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 22, 1994.

---

James B. Wessinger, III, Savannah, GA, for plaintiff.

Sean D. O'Connor, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants.

### MEMORANDUM AND ORDER ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT

LAMAR W. DAVIS, Jr., Chief Judge.

Wiley A. Wasden, III, Trustee in Debtor's Chapter 7 case, initiated this proceeding on May 7, 1993, against the United States, the Georgia Department of Revenue and the Florida Department of Revenue. The United States and Georgia Department of Revenue timely filed answers, and the Florida Department of Revenue filed a Motion to Dismiss. Subsequently, Trustee voluntarily dismissed the Georgia Department of Revenue and filed a Motion to Approve a Compromise with regard to the Florida Department of Revenue, which still pends. On November 8, 1993, the United States filed a Motion for Summary Judgment, and on November 29, 1993, Trustee responded with a Cross–Motion for Summary Judgment. Based upon the parties' motions, the record in the file and the applicable authorities, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The essential facts of the case are undisputed.[1] Debtor, Wellington Foods, Inc., filed a petition under Chapter 7 of the Bankruptcy Code on April 10, 1991. During the ninety (90) days preceding the filing of its bankruptcy petition, Debtor paid to the Internal Revenue Service ("IRS") $20,150.00, designating the payment as employee withholding taxes for the third and fourth quarters of 1990.[2]

Under the Internal Revenue Code, Debtor is required to withhold these taxes from its employees' wages and hold the taxes in trust for the benefit of the United States, until remitting the funds to the IRS. *See* 26 U.S.C. §§ 3102(a), 3402(a) and 7501.

At the time the $20,150.00 was remitted to the IRS, Debtor did not hold the funds in a separate trust account for the United States. Furthermore, copies of Debtor's bank account records, introduced by Trustee as an exhibit to his Motion for Summary Judgment, demonstrate that Debtor had insufficient funds in its bank accounts to cover the tax payment between the time the tax obligation was incurred and the date it was paid.

The Trustee initiated this proceeding to recover the $20,150.00 paid to the IRS as an avoidable preference under 11 U.S.C. § 547(b). In its Motion for Summary Judgment, the United States contends that, under *Begier v. Internal Revenue Service,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), Debtor's payment of the $20,150.00 in trust-fund taxes could not have been a preferential transfer under section 547(b) because the funds were not property of the bankruptcy estate. In his Motion for Summary Judgment, Trustee contends that, because the intervening balance in Debtor's accounts fell below the amount of the tax obligation, the trust status of the subsequent payment was lost under the exception to *Begier* enunciated in *In re Wendy's Food Systems, Inc.,* 133 B.R. 917 (Bankr.S.D.Ohio 1991). Trustee does concede, however, that if this Court finds *Begier* to be controlling in this case, then it would be appropriate to grant the United States' Motion.

---

1. Although the parties did not stipulate to any facts, neither party contested the other party's Statement of Material Facts to Which There Is No Genuine Issue To Be Tried, which statement is required to be attached to any motion for summary judgment under the Local Rules of this Court. *See* Rule 6.6 of the Local Rules for the Southern District of Georgia. Accordingly, both parties' Statements of Material Facts, to the extent that they do not conflict, will be taken as true. *Id.*

2. Trustee intimates in his brief that the trust-fund taxes were actually paid by a third-party on debt-

or's behalf. However, both the United States' and the Trustee's Statement of Material Facts To Which There Is No Genuine Issue to Be Tried set forth that the "debtor made $20,150.00 of payments to the Internal Revenue Service within ninety (90) days of the bankruptcy filing." *See* United States' Motion for Summary Judgment, Exhibit A, ¶ 2; Plaintiff's Statement of Material Facts To Which There Is No Genuine Issue to Be Tried, ¶ 2. Accordingly, there is no dispute that Debtor paid the $20,150.00 to the IRS, designating the payment as "trust-fund taxes".

## CONCLUSIONS OF LAW

Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure, which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

 The moving party bears the initial burden of showing the absence of any genuine issue of material facts. *Bald Mountain Park, Ltd. v. Oliver,* 863 F.2d 1560 (11th Cir.1989). The movant should identify the relevant portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits to show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party must support its motion with sufficient evidence and "demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute ...". *United States v. Twenty (20) Cashier's Checks,* 897 F.2d 1567, 1569 (11th Cir.1990) (*quoting Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982)).

 Once the movant has carried its burden of proof, the burden shifts to the non-moving party to demonstrate that there is sufficient evidence of a genuine issue of material fact. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991). The non-moving party must come forth with some evidence to show that a genuine issue of material fact exists. *United States v. Four Parcels of Real Property,* 941 F.2d at 1438. The trial court should consider "all the evidence in the light most favorable to the non-moving party." *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir. 1987).

The issue presented by the parties' competing motions is whether the Debtor's payment of the $20,150.00 to the IRS is avoidable as a preferential transfer under 11 U.S.C. § 547(b), where it is undisputed that Debtor collected and held the money as trust-fund taxes for the IRS under 26 U.S.C. § 7501, that Debtor made the payment from its general operating accounts within 90 days of filing bankruptcy, and that, in the period intervening between collection and payment of the trust-fund taxes, Debtor had virtually no funds in any of its bank accounts.

The United States Supreme Court seemingly resolved this issue in *Begier v. Internal Revenue Service,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), wherein the Court held that, because a debtor does not own an equitable interest in funds held in trust on behalf of the United States pursuant to 26 U.S.C. Section 7501, such trust-fund taxes do not become a part of debtor's estate, and as a result, payment of these taxes, even from a debtor's general accounts, are not transfers which are subject to avoidance under section 547(b) of the Bankruptcy Code. *Begier,* 496 U.S. at 67, 110 S.Ct. at 2267, 110 L.Ed.2d 46. Trustee does not dispute the Supreme Court's holding in *Begier,* but asserts that this case falls within the exception carved out by the bankruptcy court in *In re Wendy's Food Systems, Inc.,* 133 B.R. 917 (Bankr. S.D.Ohio 1991). In *Wendy's,* the court applied *Begier* to state trust-fund taxes and concluded that, when a debtor remits trust-fund taxes from general operating accounts that have an aggregate negative balance in the period of time intervening between collection and remittance of the trust-fund taxes, the subsequent payment is from after-acquired property, which is property of the debtor's estate and is therefore avoidable as a preferential transfer under section 547(b). *Id.* at 921.

 Section 547(b) of the Bankruptcy Code empowers a bankruptcy trustee to avoid certain transfers that have the effect of unfairly preferring one creditor over the other creditors of a debtor in bankruptcy. Under this provision, a trustee may ordinarily avoid "any transfer of an interest of the debtor in property" made, to or for the benefit of a creditor, on account of an antecedent debt, while the debtor was insolvent, if the transfer occurred within 90 days of the date of filing of the debtor's bankruptcy petition, and the creditor received more than it would have in a Chapter 7 liquidation. 11 U.S.C.

§ 547(b);[3] *In re Unicom Computer Corp.,* 13 F.3d 321 (9th Cir.1994). When a debtor transfers property which it holds in trust for the benefit of another party, however, the policy behind section 547(b) is not implicated because the debtor does not possess an interest in the trust property sufficient to bring it into the bankruptcy estate. *Begier,* 496 U.S. at 58, 110 S.Ct. at 2263. As a result, when such property is transferred to the trust beneficiary, under circumstances which would otherwise be preferential, the transfer is not subject to avoidance as a preferential transfer under section 547(b). *Begier,* 496 U.S. at 59, 110 S.Ct. at 2263.

 This much of the law is undisputed. The parties' dispute centers upon the nature of the Debtor's interest in the $20,150.00 transferred to the IRS. The United States apparently concedes that, if the $20,150.00 is property of the estate, then the transfer is avoidable as a preference. Similarly, Trustee concedes that, if Debtor actually held the $20,150.00 in trust for the IRS, then the transfer is not avoidable as a preference. Resolution of the issue in this case turns, therefore, on the narrow question of whether the $20,150.00 is properly characterized as "trust funds" under the Supreme Court's holding in *Begier,* or property of Debtor's estate under *Wendy's.* This question necessitates an examination of both decisions in some detail.

The debtor in *Begier* was a commercial airline known as American International Airways, Inc. ("AIA"). AIA was required under federal law to collect excise taxes from its customers, as well as collect and withhold federal income and FICA taxes from its employees' wages. Pursuant to 26 U.S.C. § 7501, AIA held these taxes in trust for the benefit of the United States. AIA began to fall behind in payments of the trust-fund taxes, and as a result, the IRS ordered AIA to deposit all trust-fund taxes which it collected into a separate bank account. AIA established such an account but did not keep sufficient funds in it to cover the entire amount of the taxes that it owed. It did, however, remain current on its trust-fund tax obligations through June of 1984 by making up the short-fall from its general operating accounts.

On July 19, 1984, AIA filed a petition for relief under Chapter 11 of the Bankruptcy Code. The case was ultimately converted to Chapter 7, and the Chapter 7 trustee brought an adversary proceeding against the IRS to recover the entire amount which AIA had remitted to the IRS for trust-fund taxes during the 90–day period preceding the filing of the Chapter 11 petition. The trustee contended that these payments were avoidable as preferences under 11 U.S.C. Section 547(b) (1982)[4], while the United States argued the payments were made from a trust, pursuant to 26 U.S.C. § 7501, and therefore, were not property of the debtor.

The Supreme Court first construed the Internal Revenue Code's trust-fund tax provision, 26 U.S.C. Section 7501, as creating a statutory trust which extends only to the amount of tax which the responsible party (i.e. the debtor) actually collects or withholds.

---

**3.** 11 U.S.C. Section 547(b) provides:

Except as provided in subsection (c) of this section the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**4.** 11 U.S.C. Section 547(b) (1982 ed.) provided in part that "the trustee may avoid any transfer of property of the debtor ..." As previously set forth, the current version of Section 547(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property ..." *See supra* note 1. This change in the language of the statute only supports the conclusion that a transfer of property which a debtor holds in trust for another would not be subject to avoidance as a preferential transfer.

It then concluded, however, that the "act of 'collecting' occurs at the time of payment—the recipient's payment for the service in the case of excise taxes and the employer's payment of wages in the case of FICA [and withholding] taxes." *Begier,* 496 U.S. at 60–61, 110 S.Ct. at 2264. In other words, even though AIA failed to segregate the trust-fund taxes in a separate account, a trust for the excise taxes nevertheless arose "within the meaning of section 7501" at the moment that the customers paid for their plane tickets, while a trust for FICA and income taxes arose the moment AIA paid its employees' wages. *Id.*

This conclusion did not, however, resolve the issue of whether the particular dollars which AIA remitted to the IRS from its general operating accounts were from the corpus of the trust created under section 7501. As the Court noted, "only if *those particular funds* [which AIA remitted to the IRS] were held in trust for the IRS do they escape characterization as 'property of the debtor.'" *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264 (emphasis original).

The court first determined that common-law trust principles requiring a settlor to identify an ascertainable interest in property were inapposite to the type of statutory trust created under Section 7501:

> Unlike a common-law trust, in which the settlor sets aside particular property as the trust res, *§ 7501 creates a trust in an abstract "amount"—a dollar figure not tied to any particular assets—rather than in the actual dollars withheld.* Common-law trust tracing rules, designed for a system in which particular property is identified as the trust res, are thus unhelpful in this special context.

*Begier,* 496 U.S. at 62–63, 110 S.Ct. at 2265 (emphasis added). The Court next determined that Congress, in enacting the Bankruptcy Reform Act of 1978, sought to overrule its decision in *United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), wherein the Court held that the IRS could not recover section 7501 taxes ahead of administrative expenses in a bankruptcy case. *Begier,* 496 U.S. at 61–63, 110 S.Ct. at 2265. The court was forced to acknowledge, however, that, while the "strict rule of *Randall*" was overruled by the adoption of the Bankruptcy Code, the IRS was nevertheless required to "show some connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations." *Begier,* 496 U.S. at 65–66, 110 S.Ct. at 2266 (citation omitted).

The Court, unable to find any guidance as to the question of "how extensive the required nexus must be" in the text of the Bankruptcy Code, turned to legislative history. *Id.* The Court quoted the House Report to section 547(b), as follows:

> A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments. H.R.Rep. No. 95–595, *supra,* at 373, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329.

*Begier,* 496 U.S. at 66, 110 S.Ct. at 2267. Based upon this portion of legislative history, the Court concluded that a debtor's voluntary payment of trust-fund taxes provided the required nexus, reasoning as follows:

> Under a *literal reading* of the above passage, the bankruptcy trustee could not avoid *any voluntary prepetition payment of trust-fund taxes, regardless of the source of the funds.* As the House Report expressly states, the limitation that the funds must "have been properly held for payment" is satisfied "if the debtor is able to make the payments." The debtor's act of voluntarily paying its trust-fund tax obligation therefore *is alone sufficient* to establish the required nexus between the amount held in trust and the funds paid to the IRS. *We adopt this literal reading.*

*Begier,* 496 U.S. at 66–67, 110 S.Ct. at 2267 (emphasis added).

It would seem, then, that under *Begier,* a "floating trust",[5] or as Justice Scalia refers to it, "some hitherto unheard-of floating trust in an unidentified portion of the taxpayer's current or later acquired assets",[6] is created under 26 U.S.C. § 7501 when a debtor makes a voluntary payment of trust-fund taxes. The act of collecting the tax from customers (i.e. when they purchase the tickets), or paying employee wages, creates the trust under section 7501, and the act of voluntarily remitting the funds to the taxing authority establishes the requisite nexus between the trust and the actual funds remitted. This is true regardless of the source of payment.

The bankruptcy court in *In re Wendy's Food Systems, Inc.,* 133 B.R. 917 (Bankr. S.D.Ohio 1991), however, did not read *Begier* in this manner. In *Wendy's,* the debtor, Wendy's Food Systems, Inc. ("WFS"), operated a number of fast-food restaurants in the State of Ohio, and was obligated under Ohio law to charge and collect state sales tax on all goods sold. WFS filed a petition under Chapter 11 of the Bankruptcy Code on August 25, 1987, and thereafter operated as a debtor-in-possession. Immediately prior to the commencement of the ninety day period preceding WFS's bankruptcy, WFS owed the state approximately $1,166,116.80 in unremitted sales taxes and had, in its bank accounts at this time, an aggregate negative balance. During the 90 days preceding the filing of the bankruptcy petition, WFS remitted over $200,000.00 to the State of Ohio for past due sales taxes. There was little, if any, dispute between the parties that (1) WFS collected the sales taxes in trust for the State of Ohio and (2) that WFS voluntarily remitted the past due taxes to the State.

The Court determined that the Supreme Court's decision in *Begier* was applicable to state trust-fund taxes under Ohio law, and concluded that the decision requires a taxing authority to establish three separate elements to show that funds transferred from a debtor's non-segregated accounts were not the debtor's property for purposes of a pref-

erential transfer under 11 U.S.C. § 547(b). *Wendy's,* 133 B.R. at 921. These three elements are:

1. that the debtor collected or withheld the taxes, thus creating a trust in the amount of those taxes collected or withheld;

2. that the debtor made a voluntary payment to the taxing authority from its unencumbered assets; and

3. that a reasonable nexus exists between these first and second steps.

*Id.* The court then expanded upon the third element:

> This reasonable nexus will be presumed if the taxing authority establishes that the debtor made a voluntary payment. However, because the *Begier* court established only a presumption or reasonable assumption and not a conclusion, such presumption may be rebutted by evidence which shows that the nexus does not exist.

*Id.*

In applying this three-part test to the facts before it, the court concluded that the State had failed to establish a reasonable nexus under the third element. *Id.* The court reasoned that:

> [A] fundamental basis for that "reasonable assumption" in *Begier* arose from the existence of commingled funds in an amount sufficient to satisfy the tax obligation paid and a desire by the court to simplify or eliminate any tracing requirement ... The facts ... in this case, however, do not necessarily show payment from an account with sufficient funds to include the collected taxes. *Not only did WFS commingle the collected sales taxes with its general operating revenues, but the five [bank] accounts where the collected taxes were placed had an aggregate negative balance on May 19, 1987.* WFS made the payments after this date ... This crucial factual distinction removes the reasonable-

---

5. *See e.g.* Wayne Rodney, Note, *The Non–Traceable 7501 Tax Trust and Bankruptcy Superpriority,* 14 Cardozo L.Rev. 449 (1992) (concluding that the *Begier* court created, under 26 U.S.C. § 7501, a floating trust).

6. *Begier,* 496 U.S. at 71, 110 S.Ct. at 2269 (Scalia, J., concurring) (In using the term to describe the majority's holding regarding a section 7501 trust, Justice Scalia argues that the Court reads more into a section 7501 trust than was required in the case before it.).

ness from the assumption created in *Begier*. Here the difficulty lies not in identifying trust fund taxes within a commingled account, but rather establishing any connection whatsoever between the funds collected and deposited into the [bank] accounts prior to May 19, 1987 and the subsequent payments.

*Id.* (emphasis added). Accordingly, the court held that the sales taxes were property of the estate except to the extent of any monies which were actually present in any of the accounts on May 19, 1987. *Id.* 133 B.R. at 923.

 The *Wendy's* decision has an invitingly familiar quality about it, perhaps because the Court is applying, although not explicitly, a form of the common-law tracing doctrine known as the "lowest intermediate balance" rule.[7] Nevertheless, I cannot agree with the Court's analysis because it adds an element to the requirements of *Begier* which is not contained in the Supreme Court's opinion. A taxing authority is not required under *Begier*, as the *Wendy's* court holds, to show that a debtor made a voluntary payment of trust-fund taxes *and* that a reasonable nexus exists between the creation of the trust and the payment. To the contrary, *Begier* makes it clear that the debtor's act of making a voluntary payment to a taxing authority, which is designated as "trust-fund taxes", conclusively establishes the requisite nexus between the creation of the trust and the actual dollars remitted to the taxing authority. Admittedly, it does not appear that the Supreme Court faced an intervening balance problem in *Begier*. However, in "literally reading" the legislative history to section 547(b) to mean that a "bankruptcy trustee could not avoid any voluntary pre-petition payment of trust-fund taxes, regardless of the source of the funds,"[8] the Court did not restrict its holding to a case where a debtor maintains sufficient funds in its accounts to cover the trust-fund tax payment. In light of this language, I hold that the conclusive presumption arises upon voluntary payment, regardless of the source of the payment and regardless of any intervening balance in the debtor's aggregate operating accounts.

This conclusion is supported by two decisions, one decided before *Begier*, and one decided after, which explicitly apply the "lowest intermediate balance" rule to trust-fund taxes. *See In re R & T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981, 987 (9th Cir.1989); *In re Copeland Enterprises, Inc.*, 133 B.R. 837 (Bankr.W.D.Tex. 1991) *aff'd*, 991 F.2d 233 (5th Cir.1993). The debtors in both of the these cases, however, *did not make a voluntary payment* to the taxing authority.

---

7. The "lowest intermediate balance" rule is a trust-fund tracing rule that has long been applied as a matter of federal common-law in bankruptcy proceedings when a debtor or trustee has commingled funds, which are subject to a common-law trust, with other funds in a bank account. *See e.g.*, *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424 68 L.Ed. 873 (1924); *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039 (3rd Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994); *Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963, 965–66 (5th Cir.1980), *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). The rule allows a party claiming benefit to a trust to trace the commingled trust-funds, but it requires the party to show that the lowest balance in the bank account where the trust-funds were deposited (i.e. commingled), between the time of deposit of the trust-funds and the time of bankruptcy, did not fall below the amount of the claimed trust. *See e.g.*, *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir.1988); *In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684–85 (10th Cir.1987); *In re McLean Industries*, 113 B.R. 149, 151 (Bankr.S.D.N.Y.1987); *Navix Line, Ltd. v. Smith & Kelly Co., Inc., et al.*, *(In re Smith & Kelly Co., Inc.)*, Ch. 7 No. 90–40077, Adv. Pro. No. 90–4035, Slip Op. at 7 (Bankr.S.D.Ga. July 6, 1990); 4 *Collier on Bankruptcy* (15th ed. 1989) para. 541.13 at 541–79. In other words, a valid trust may be impressed upon trust-funds which have been commingled in a debtor's bank account only to the extent of the lowest intervening (or intermediate) balance between the time of deposit in the account (i.e. date of commingling) and the date of bankruptcy. Furthermore, a trust-claimant's ability to trace commingled funds under the rule has traditionally been limited to the bank account where the trust-funds are actually deposited. Funds in other accounts, where the trust-fund monies were not actually deposited, could not be impressed with a trust unless the claimant could positively trace trust assets into the other accounts. *See e.g.*, *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d at 619–20; *In re United Cigar Stores Co. of America*, 70 F.2d 313 (2nd Cir.1934).

8. *Begier*, 496 U.S. at 66–67, 110 S.Ct. at 2267.

In *R & T Roofing*, the IRS seized some $18,850.18 from the debtor's general operating accounts within the 90–day period preceding the debtor's bankruptcy. The trustee in the case brought an action seeking to avoid the seizure as a preferential transfer under section 547(b). The Ninth Circuit held that, because the government could not satisfy the "lowest intermediate balance" rule, the funds seized by the IRS were not trust-fund taxes but were property of the estate, and therefore, the seizure was avoidable as a preference. *R & T Roofing*, 887 F.2d at 987–88.

In *Begier*, the Supreme Court made note of the Ninth Circuit's decision in *R & T Roofing*, but did not expressly overrule the decision. Instead the Court characterized the case as dealing with an issue which was merely "related" to that which it faced in *Begier*. *Begier*, 496 U.S. at 57 n. 2, 110 S.Ct. at 2262 n. 2.[9]

In *Copeland*, the debtor's estate owed the State of Texas in excess of $1.8 million in sales taxes which it had collected from its customers pre-petition. The debtor had not remitted any of these funds to the State, but had sufficient funds on hand *post*-petition to cover the amount of the tax liability. The State brought an action to recover the monies from debtor's estate, claiming that the collected sales taxes were trust-fund taxes and therefore not property of the estate.

The bankruptcy court first determined that the taxes were trust-fund taxes under the substantive laws of Texas, and as a re-sult, the Supreme Court's decision in *Begier* was applicable to the case. *Copeland*, 133 B.R. at 839. In applying *Begier*, however, the court held that, in order for the State to recover sales taxes collected by the debtor pre-petition as trust funds, the State was required to prove that during the period intervening between collection of the sales taxes and the filing for bankruptcy, the debtor had sufficient funds on hand to satisfy the State's trust-fund claim. *Id.* (*citing In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684 (10th Cir.1987)). According to the court:

> [I]f the balance of cash on hand on any interim day was less than the amount of the trust fund claims, then the trust fund claims are limited to that "lowest intermediate balance." Stated another way, once the trust fund is depleted, it cannot be replenished.

*Id.* at 839–40 (citations omitted).

Applying the rule to the facts before it, the court found that the State had properly identified the debtor's various bank accounts into which the taxes had originally been deposited, traced the taxes into their ultimate repository, a concentration account at one bank, and established that the debtor's combined daily cash balances, during the period between collection and bankruptcy, never dropped below the amount of the State's trust-fund claims. *Id.* at 840. Accordingly, the court concluded that $1.8 million of the debtor's total assets were funds which the debtor held in trust for the benefit of the

9. The Court likewise characterized the District of Columbia Circuit's decision in *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987), as dealing with a related issue, and therefore declined to explicitly overrule it. *See Begier*, 496 U.S. at 57 n. 2, 110 S.Ct. at 2262 n. 2. The *Drabkin* Court concluded that, even under the "reasonable assumptions" of the Bankruptcy Code, it is not a reasonable assumption to "conclusively presume that the funds used for payment [of trust-fund tax obligations] necessarily are endowed with trust character". *Drabkin*, 824 F.2d at 1116.

Thus, *Drabkin*, like *Begier*, involved a debtor making a pre-petition voluntary payment of trust-fund taxes. Unlike *Begier*, however, the D.C. Circuit held that, because the trust-fund payment was made from an account in which no trust-fund tax monies had ever been deposited, such a payment, standing alone, was not sufficient to create a conclusive presumption of a nexus between the trust and the payment. *Id.* Thus, while *Drabkin* is much more difficult to distinguish from *Begier* because both cases involve voluntary pre-petition payments of trust-fund taxes, one might argue that they are distinguishable based upon the fact that the debtor in *Drabkin* paid the taxes from an account in which it was undisputed that no trust-fund taxes had ever been deposited (i.e. commingled). Nevertheless, the Supreme Court's refusal to overrule *Drabkin* is somewhat puzzling, particularly in light of the fact that the Third Circuit Court of Appeals, in reaching the decision which the Supreme Court affirmed in *Begier*, disavowed the majority opinion in *Drabkin*, opting instead to follow Judge Ruth Bader Ginsburg's dissent in the case. *See Begier v. U.S., I.R.S.*, 878 F.2d 762, 768 (3rd Cir.1989) *aff'd Begier*, 496 U.S. 53, 110 S.Ct. 2258.

State rather than property of the debtor's bankruptcy estate. *Id.*

Thus, unlike *Begier, Wendy's* and the instant case, the debtors in *R & T Roofing* and *Copeland* had not made a voluntary pre-petition payment of their trust-fund taxes. This is a critical factual distinction because the very heart of the Supreme Court's opinion in *Begier* is the debtor's act of voluntarily remitting the trust-fund taxes. Without the predicate act of voluntary remittance, there is no conclusive presumption of a nexus between the creation of the trust and any particular assets of a debtor (unless of course the debtor has properly separated the trust-fund taxes from the rest of his assets). As a result, where there has been no voluntary payment, a taxing authority is still required to establish some sort of nexus through the use of traditional trust-fund tracing rules, such as the "lowest intervening balance" rule. However, where, as in the instant case, there has been a voluntary pre-petition payment made to the IRS, designating the payment as trust-fund taxes, such payment will be conclusively presumed to be from the corpus of the trust created under 26 U.S.C. § 7501, or similar provision.

In accordance with the above conclusions, it is apparent that the $20,150.00, which Debtor voluntarily paid to the IRS under the designation of "trust-fund taxes", are funds which Debtor held in trust for the benefit of the IRS. Trustee may not, therefore, avoid the payment of these funds as a preferential transfer under 11 U.S.C. § 547(b). There being no other issues in dispute, Trustee's motion for summary judgment is denied, and the United States' motion for summary judgment is granted. The United States is entitled to judgment denying any recovery to the Trustee.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Summary Judgment of Defendant, Internal Revenue Service, an agency of the Treasury Department of the United States, is hereby GRANTED; let judgment be entered declaring the funds paid to the Internal Revenue Service to not be subject to recovery as a voidable preference.

IT IS THE FURTHER ORDER OF THIS COURT that Plaintiff's Motion for Summary Judgment is hereby DENIED.