In re SUNRISE PAVING, INC., Debtor.

Bankruptcy No. 94–5–5151–SD.

United States Bankruptcy Court,
D. Maryland.

Sept. 3, 1996.

David W. Cohen, Baltimore, Maryland, for Debtor.

Sandra M. Jefferson, Special Assistant United States Attorney, Internal Revenue Service, Baltimore, Maryland, for the I.R.S.

Orbie R. Shively, Baltimore, Maryland, for Chapter 7 Trustee, George W. Liebmann.

## MEMORANDUM OPINION DENYING MOTION TO COMPEL CHAPTER 7 TRUSTEE TO DISTRIBUTE FUNDS TO INTERNAL REVENUE SERVICE

E. STEPHEN DERBY, Bankruptcy Judge.

The Internal Revenue Service ("IRS") has moved for an order that compels the Chapter 7 Trustee to distribute to it certain funds from the bankruptcy estate. The IRS alleges the Debtor was holding these funds in trust for the IRS at the time it filed its bankruptcy petition. The Chapter 7 Trustee opposes the IRS's motion.

Under the United States Supreme Court's decision in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), a trust in favor of the IRS for withholding taxes is created at the time employees are paid their net wages. *Id.* at 60–62, 110 S.Ct. at 2263–65. The trust is created in the amount of taxes withheld, rather than in specific property. *Id.* at 62–63, 110 S.Ct. at 2264–65. The *res* of the trust is established by the act of a debtor in making a voluntary payment to the IRS. *Id.* at 65–67, 110 S.Ct. at 2266–67. In his concurring opinion, Justice Scalia concluded identification of the trust *res* "... *was* made by the taxpayer when it wrote a check upon a portion of a designated fund to the Government.

*Id.* at 71, 110 S.Ct. at 2269. (emphasis in original.).

The *Begier* decision, however, did not address what happens when the funds that are identified as the *res* of the trust are already subject to a security interest of a third party when the check is written to the IRS. What happens in such a situation is a question the parties urge upon the court.

## FACTS

On August 8, 1994, the Debtor, Sunrise Paving, Inc., drafted a check, No. 5465, drawn on Signet Bank and payable to the IRS in the amount of $28,206.46. This check was to satisfy Debtor's Federal Insurance Contribution Act ("FICA") employment tax responsibilities for the period ending June 30, 1994. On August 10, 1994, Debtor drafted a forwarding letter to the IRS enclosing its August 8, 1994 check, together with its 941 FICA employment tax return. The next day on August 11, 1994, Debtor filed a Chapter 7 bankruptcy petition. Debtor mailed the August 8, 1994 check to the IRS after its Chapter 7 petition was filed, and the letter is postmarked August 12, 1994. The Chapter 7 Trustee was also appointed on August 12, 1994. The Trustee immediately closed all of the Debtor's bank accounts. The IRS received Debtor's check on August 17, 1994. It appears from the face of the check that the IRS presented it to Signet Bank on August 18, 1994. Because the Trustee had closed out Debtor's account, however, Debtor's check was dishonored by Signet Bank. On November 22, 1994, the IRS filed a proof of claim in Debtor's bankruptcy case in the amount of $28,206.46, representing the full amount of Debtor's check for withholding taxes for the quarter ending June 30, 1994.

Prior to these events and the filing of its bankruptcy petition, Debtor had received a loan from Orix Credit Alliance, Inc. ("Orix"). In order to obtain the loan from Orix, Debtor executed and delivered a Security Agreement/Mortgage on Goods and Chattels. Pursuant to the terms of the security agreement, Orix acquired a security interest in substantially all of Debtor's assets, as set forth below.

all goods, chattels, machinery, equipment, inventory, accounts, chattel paper, notes, contract rights, receivables, account receivables, general intangibles, furniture, fixtures and property of every kind and nature, wherever located, now and hereafter belonging to Debtor or in which Debtor has any interest and any and all proceeds thereof.

Orix perfected its security interest prior to commencement of the quarter ending June 30, 1994 by filing a financing statement.

Debtor defaulted on its loan from Orix prior to filing bankruptcy. Not surprisingly, Orix filed a Motion For Relief From Stay seeking permission to enforce its rights under its loan documents in certain itemized pieces of equipment. On September 19, 1994, the court entered a default order granting Orix's Motion For Relief From Stay as to specified equipment collateral. Orix did not foreclose on the equipment. Instead, Orix consented by a written, filed Stipulation to the Trustee's proposed public sale of Debtor's equipment on the condition that it would be paid ⅔ "of all monies collected by the Trustee through and including October 14, 1994," with a minimum of $58,772.50, from the proceeds of the sale and from the cash collateral in which it held a perfected security interest. (Dkt. 33) These monies were described as cash collateral and were further identified in recital 6 as "cash proceeds of the Collateral [Equipment] and accounts receivable, all of which are cash collateral...." The Trustee lived up to this agreement, paying Orix $58,772.50 on October 13, 1994 and $110,875.05 on November 11, 1994, for a total amount of $169,647.55, the amount of Orix's debt as of the bankruptcy filing.

The IRS asserts that the money the Chapter 7 Trustee used to satisfy Orix's claim came from funds Debtor was holding for it in trust pursuant to the Internal Revenue Code's trust-fund tax provision, 26 U.S.C. § 7501. Consequently, the IRS has filed the instant Motion for Order Compelling the Chapter 7 Trustee to Distribute to the IRS Monies Held in Trust Pursuant to 26 U.S.C. § 7501. The Trustee has opposed. Debtor also filed papers supporting the IRS's position.

There has been no evidence presented as to what monies were on deposit in Debtor's Signet account when Debtor either wrote or mailed the IRS check. Likewise, there is no evidence as to the amounts collected by the Trustee on accounts receivable post-petition that were part of Orix's collateral or as to the net proceeds received by the Trustee from the sale of equipment in which Orix had a security interest.

## DISCUSSION

The IRS claims that monies in Debtor's Signet Bank account belong to it, because Debtor held such funds in trust for it, citing *Begier v. IRS*, 496 U.S. 53, 110 S.Ct. 2258. *Begier* interpreted the effect of 26 U.S.C. § 7501 in the bankruptcy context. The Chapter 7 Trustee disagrees. He argues that *Begier* is applicable only to prepetition transfers to the IRS, not to post-petition ones, and that this case involves a post-petition transfer. He further contends that Orix's perfected security interest in the funds dictates a different outcome in this case from that in *Begier*.

Under § 7501 of the Internal Revenue Code, "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501. In determining § 7501's effect on this case, the court is bound by the decision in *Begier*.

The debtor in *Begier v. IRS* was a commercial airline known as American International Airways, Inc. ("AIA"). As an employer, AIA was responsible for withholding and collecting federal income and FICA taxes from its employees wages under 26 U.S.C. § 3402(a) and § 3102(a). AIA fell behind on its payments of these taxes to the IRS. Consequently, the IRS directed AIA to establish a 26 U.S.C. § 7512 account to deposit future tax payments. AIA established a § 7512 account, but it failed to deposit all required payments into the account. It did, however, manage to make timely tax payments to the IRS by utilizing its general corporate accounts to supplement its § 7512 account.

On July 19, 1984, AIA sought protection under Chapter 11 of the Bankruptcy Code. AIA tried unsuccessfully to operate its business in Chapter 11. The case was ultimately converted to Chapter 7, and a Chapter 7 trustee was appointed to administer the bankruptcy estate.

The Chapter 7 trustee discovered that AIA had made payments to the IRS for withholding taxes within ninety days of the bankruptcy petition, and he sought to avoid these payments as preferential transfers under 11 U.S.C. § 547. The bankruptcy court held that the trustee could avoid payments made from the general corporate accounts, but that payments from the trust account were held in trust for the IRS and were not property of the debtor pursuant § 541 of the Bankruptcy Code. *Begier v. IRS*, 496 U.S. at 57, 110 S.Ct. at 2262. On appeal, the district court affirmed the bankruptcy court's decision. *Id.* However, the Court of Appeals for the Third Circuit disagreed with both the bankruptcy and district courts, "holding that *any* prepetition payment of trust-fund taxes is a payment of funds that are not the debtor's property and that such a payment is therefore not an avoidable preference." *Id.*

The United States Supreme Court agreed with the Court of Appeals for the Third Circuit that the trustee could not avoid payments of prepetition trust-fund taxes made by the debtor out of its general accounts. The Supreme Court first construed § 7501, the Internal Revenue Code's trust-fund tax provision, as creating a statutory trust for the amount of tax that a debtor actually collects or withholds. *Id.* at 60, 110 S.Ct. at 2263. It concluded that "withholding thus occurs at the time of payment to the employee of his net wages." *Id.* at 60–61, 110 S.Ct. at 2264. Furthermore, the Court found that there is no general requirement that withholding taxes be segregated from the employer's general funds. *Id.* at 61, 110 S.Ct. at 2264. In other words, although AIA failed to segregate the trust fund taxes in a separate account, a trust for withholding taxes nonetheless arose "within the meaning of § 7501" at the moment that AIA paid its employees.

■ Pursuant to this reasoning, unlike a common law trust which requires that a trust corpus, or *res,* be established before the trust is created, a § 7501 trust can emerge before the property making up the trust has been identified. *Id.* at 62, 110 S.Ct. at 2264. "A § 7501 trust is radically different from the common-law paradigm, however." *Id.* Thus, "§ 7501 creates a trust in an abstract 'amount'—a dollar *figure* not tied to any particular assets—rather than in the actual dollars withheld." *Id.* As one court has stated,

> It would seem, then, that under *Begier,* a "floating trust," or as Justice Scalia refers to it, "some hitherto unheard-of floating trust in an unidentified portion of the taxpayer's current or later acquired assets," is created under 26 U.S.C. § 7501 when a debtor makes a voluntary payment of trust-fund taxes.

*Matter of Wellington Foods, Inc.,* 165 B.R. 719, 725 (Bankr.S.D.Ga.1994). A § 7501 trust is, therefore, like a dark cloud hanging over a debtors assets, waiting to attach to some identifiable asset. The issue becomes what is necessary to allow a § 7501 trust to descend upon certain assets of a debtor and claim such assets for its *res.*

The Supreme Court viewed this question as a tracing problem, *i.e.* could the IRS trace the funds making up the corpus of its § 7501 trust. In answering this question, the Court found that the Bankruptcy Code "fundamentally restructured" the way trust fund trusts were treated in bankruptcy. *Begier v. IRS,* 496 U.S. at 63, 110 S.Ct. at 2265. If found that the "strict rule of Randall thus did not survive the adoption of the new Bankruptcy Code." *Id.* at 65, 110 S.Ct. at 2266. *See United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) (dealing with tax fund trusts under the Bankruptcy Act). The Court found that Congress had intended to replace the strict tracing rule of the Bankruptcy Act with more a lenient rule in terms of tax fund trusts. *Id.* at 65, 110 S.Ct. at 2266. The Supreme Court directed courts to apply "reasonable assumptions" to govern the tracing of funds. *Id.* at 67, 110 S.Ct. at 2267. The *Begier* court did not,

however, abandon the need to identify some funds available for payment.

> But by requiring the IRS to demonstrate that amounts of taxes withheld are still in possession of the debtor at the commencement of the case ... Congress expected that the IRS would have to show *some* connection between the § 7501 Trust and the assets sought to be applied to a debtor's trust-fund tax obligations.

*Id.* at 65–66, 110 S.Ct. at 2266. (Emphasis in original.)

■ While the boundaries of *Begier's* reasonable assumption rule are not defined, it appears from the Court's decision that a debtor, by making a voluntary prepetition payment, or perhaps simply by writing a check that is later paid, identifies the property of the trust, so that it becomes property of the IRS. The majority opinion states that "any voluntary prepetition payment of trust-fund taxes out of the debtor's assets" is enough. *Id.* at 67, 110 S.Ct. at 2267. While this language raises an issue as to what constitutes a voluntary prepetition payment, Justice Scalia's individual concurrence in *Begier* clears up the ambiguity as follows:

> We do not have to reach that question today, because even though identification was not made by the statute immediately, it was made by the taxpayer when it wrote a check upon a portion of a designated fund to the Government.

*Id.* at 71, 110 S.Ct. at 2269 (Scalia, J., concurring).

What is required is that a debtor identify the *res* in some way.

Having found that AIA's payments to the IRS constituted the corpus of the § 7501 trust, the Supreme Court held that "AIA's payments of trust-fund taxes to the IRS from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of property held in trust for the government pursuant to § 7501." *Id.* at 67, 110 S.Ct. at 2267. Thus, it concluded that, since the monies were not property of the bankruptcy estate, the trustee could not avoid them under 11 U.S.C. § 547(b). *Id.* "Because the debtor does not own an equitable interest in property he holds in trust for

another, that interest is not 'property of the estate.'" *Id.* at 59, 110 S.Ct. at 2263. *See also Matter of Al Copeland Enterprises, Inc.,* 991 F.2d 233, 235 (5th Cir.1993); *In re Commodore Business Machines, Inc.,* 180 B.R. 72, 82 (Bankr.S.D.N.Y.1995); *In re Advent Management Corp.,* 178 B.R. 480, 487 (9th Cir. BAP 1995).

 Whether a trust is a common-law trust or a statutory trust, it needs a *res.* A trust without a *res* is an anomaly not favored by the law. The sooner the *res* can be identified the better. Accordingly, under general trust law, a promise to create a trust becomes effective when the promisor transfers or otherwise designates a *res* as trust property. *Id.* at 71, 110 S.Ct. at 2269 (citing 1 W. Fratcher, Scott on Trusts § 26.5 (4th ed. 1987)).

In *Matter of Wellington Foods, Inc.,* the court held that a voluntary payment of withholding taxes conclusively established the nexus between the § 7501 trust and the debtor's funds, and the payment was insulated from attack as a preferential transfer even where the intervening balance in the debtor's accounts fell below the amount of its tax obligation. *Id.* at 726–728. What seems to have mattered to the *Wellington Foods* court is that there be some nexus between the § 7501 trust and the unencumbered assets making up its corpus. *Id.* at 728. The voluntary payment to the IRS satisfied that nexus in the court's view. Thus, it concluded, "[h]owever, where, as in the instant case, there has been a voluntary pre-petition payment made to the IRS, designating the payment as trust-fund taxes, such payment will be conclusively presumed to be from the corpus of the trust created under 26 U.S.C. § 7501, or similar provision." *Id.*

 Applying *Begier* to the facts of this case, the court finds that the Debtor paid its employees for the work they had done during the period ending on June 30, 1994. Under *Begier,* its wage payments to employees created a § 7501 trust in favor of the IRS for withholding taxes. *Id.* at 60–1, 110 S.Ct. at 2263–64. When the Debtor wrote its check to the IRS on August 8, 1994, it may have attempted to identify the *res* of the § 7501 trust, but the proof does not show

that such nexus was established. No evidence was introduced to show what, if any, monies were in the account on which the check was drawn. The delay in mailing until August 12, 1994 is consistent with there not being funds in the account to cover the check. Even if mailing the check might constitute an act of voluntary payment by the Debtor sufficient to create a § 7501 trust, it was done post-petition when Debtor no longer had rights in the account. This court, therefore, does not reach the issue of whether the mere act of writing a check, without making a payment, could establish the conclusive nexus between the § 7501 trust and the account funds.

 Likewise, there has been no evidence submitted as to the specific funds used by the Trustee to pay Orix. The Trustee received funds from the sale of Orix's equipment collateral and from his post-petition collection of Orix's accounts receivable collateral, and these funds may have been used to pay Orix, rather than whatever funds may or may not have been in Debtor's account on which the check was drawn. Regardless, there has not been a showing that Orix had a security interest in Debtor's bank account at Signet Bank, or that there were identifiable proceeds in that account. A security interest in accounts does not include deposit accounts, and deposit accounts are not covered by Article 9 of the Uniform Code. Md.Comm.Law Code Ann. §§ 9–106, 9–105(1)(e) and 9–104(*l* ). Therefore, the alleged security interests of Orix appear to be a nonissue on the facts presented.

Although the concurrence in *Begier* recognized that a tug-of-war would take place when a § 7501 trust tried to claim assets pledged to a secured creditor, it did not resolve the issue. *Id.* at 71, 110 S.Ct. at 2269 (Scalia, J., concurring). There appear to be no cases directly on point. *See generally* Onsager, "Trust Fund Taxes in Bankruptcy: Begier v. IRS Five Years Later," 15 Am. Bankr.Inst.J. 15 (1996). However, several courts have dealt with analogous situations both in and out of the bankruptcy context. *E.g., Huizinga v. United States,* 68 F.3d 139, 145 (6th Cir.1995); *Barnett v. I.R.S.,* 988

F.2d 1449, 1457 (5th Cir.1993); *Mortenson v. United States,* 910 F.Supp. 1325, 1334 (N.D.Ill.1995); *In re Mando,* 154 B.R. 953, 957 (Bankr.E.D.Ky.1993).

The leading case involving whether the IRS can establish a § 7501 trust in assets pledged to a creditor is *Honey v. United States,* 963 F.2d 1083 (8th Cir.1992). In *Honey,* the Court of Appeals for the Eighth Circuit addressed whether assets that were the subject of a security interest constituted unencumbered funds for 26 U.S.C. § 6672 purposes. Section 6672 provides that any person responsible for collecting and paying over withholding taxes, who willfully fails to collect such tax, shall be liable to a penalty equal to the total amount of the tax not collected and paid over. 26 U.S.C. § 6672. The debtor corporation, Phoenix Housing Systems, Inc. ("Phoenix"), had failed to remit any withholding taxes to the IRS as required by 26 U.S.C. §§ 3102 and 3402. Pursuant to 26 U.S.C. § 6672, the officers of the corporation were personally liable for back taxes unless they could prove that all of Phoenix's assets were encumbered at the time the taxes became due. *Id.* During the time the taxes arose, the corporations assets were pledged as security to Merchant & Planters Bank & Trust Company ("Merchants"). *Id.* at 1091–2.

Looking at the rationale underlaying § 6672, the Court of Appeals for the Eighth Circuit held that the "definition of 'unencumbered funds' should be a broad one in order to ensure that the taxes are paid." *Id.* at 1090. The court accordingly adopted the following definition:

> Where the taxpayer's discretion in the use of funds is subject to restrictions imposed by a creditor holding a security interest in the funds which is superior to any interest claimed by the IRS, the funds are regarded as encumbered if those restrictions preclude the taxpayer from using the funds to pay the trust fund tax.

*Id.*

In other words, it is not enough that a creditor have a security interest in designated funds to prevent a debtor from identifying a § 7501 trust *res;* the security agreement must explicitly forbid such funds being used to pay withholding taxes. *Id.* Since Debtor's creditor had not prohibited the use of cash collateral, the Eight Circuit found, as a matter of law, "that while Merchants's security interest in Phoenix's account ... was superior to the interest of the IRS in those funds, there is no evidence that Merchant restricted Phoenix's ability to use those funds to satisfy the preexisting tax obligation." *Id.* at 1092. Since the secured creditor had not prohibited the debtor from using cash collateral to pay withholding taxes, the debtor was free to use the money to pay the IRS. The court, therefore, concluded that the funds were not encumbered. *Id. Accord Huizinga v. United States,* 68 F.3d at 144; *Barnett v. I.R.S.,* 988 F.2d at 1457; *Mortenson v. United States,* 910 F.Supp. at 1334; *In re Mando,* 154 B.R. at 957.

### CONCLUSION

The court finds that a § 7501 trust was created in favor of the IRS when Debtor paid its employees for the period ending June 30, 1994. There is inadequate evidence that a *res* for the trust was identified or established by the issuing of a check to the IRS by Debtor. Therefore, the court will deny the IRS's Motion for Order Compelling the Chapter 7 Trustee to Distribute to the IRS Monies Held in Trust Pursuant to 26 U.S.C. § 7501.